In re Carol A. CUDEYRO, Debtor.

Bankruptcy No. 93–16427F.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 20, 1997.

Harvey Iseman, Philadelphia, P.A.

Andrew N. Schwartz, Chapter 7 Trustee, Philadelphia, PA.

Kevin P. Callahan, Assistant U.S. Trustee, Daniel K. Astin, Staff Attorney, Office of U.S. Trustee, Philadelphia, PA.

## MEMORANDUM OPINION

BRUCE FOX, Bankruptcy Judge.

The chapter 7 trustee, Andrew N. Schwartz, has filed an objection to the debtor's second amended exemption claim. The objection has two components: first, that the debtor is barred from amending her exemption claim a second time under the circumstances of this case; second, that the property interest identified in the second amendment is not exempt under state law, as the debtor now asserts. The first component of the chapter 7 trustee's objection is supported by the United States trustee. Obviously, the entire objection is opposed by the debtor.

At a hearing held on this objection, the parties agreed to the following facts (or these facts are derived from the docket entries in this case).[1]

### I.

The above–captioned chapter 7 bankruptcy case was initiated by voluntary petition on November 4, 1993. The debtor filed her bankruptcy schedules with her petition, including schedule C: "Property Claimed as Exempt." On schedule C the debtor claimed her interest in an "Auto Accident" as exempt by virtue of 11 U.S.C. § 522(d)(11)(D),[2] and valued this exempt interest in the amount of $7,500.00. The value of the asset itself was listed as unknown. Ex. T–1.

On December 3, 1993, the chapter 7 trustee held a meeting of creditors and examined the debtor pursuant to 11 U.S.C. § 341(a). The trustee thereafter filed a report on December 10, 1993 stating his intention to "check[ ] auto accident claim." (Docket entry 12/10/93). On October 12, 1994, the trustee filed a notice that he believed there were non-exempt assets to distribute to creditors.

On January 4, 1995, the debtor filed an application to voluntarily dismiss her case. As a chapter 7 debtor does not have an absolute right under section 707 to dismiss[3] (such a right exists in chapter 13 cases by virtue of section 1307(b)) and as no persuasive reason to dismiss was offered, the application was denied by an order dated January 18, 1995.

On June 15, 1995, the law firm of Kubert, Himmelstein & Associates, P.C. filed a motion for the allowance of legal fees and costs "in connection with personal injury case."

---

1. As I stated at the hearing, I shall take judicial notice of the docket entries in this case. Federal Rule of Evidence 201, incorporated in these proceedings by Bankr.R. 9017. *See Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n. 3 (3d Cir.1991); *Levine v. Egidi*, 1993 WL 69146, at *2 (N.D.Ill.1993); *In re Paolino*, 1991 WL 284107, at * 12 n. 19 (Bankr.E.D.Pa. 1991); *see generally In re Indian Palms Associates, Ltd.*, 61 F.3d 197 (3d Cir.1995).

2. When the debtor filed her chapter 7 petition, section 522(d)(11)(D) provided:
 (d) The following property may be exempted under subsection (b)(1) of this section:
 \* \* \*
 (11) The debtor's right to receive, or property that is traceable to—
 (D) a payment, not to exceed $7,500, on account of personal bodily injury, not including pain and suffering or compensation for

actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent;
 This subsection was amended effective October, 1994 by Pub.L. 103–394, § 108(d)(8) to increase the exemption cap in section 522(d)(11)(D) to $15,000.00. However, this amendment would not apply to cases commenced prior to the effective date of the amendment. Pub.L. 103–394, § 702(b); *see In re Claude*, 206 B.R. 374, 376 n. 2 (Bankr.W.D.Pa. 1997). Thus, the lower ceiling of $7,500.00 remains relevant to this case.

3. *See, e.g., In re Sheets*, 174 B.R. 254, 255 (Bankr.N.D.Ohio 1994); *In re Heatley*, 51 B.R. 518 (Bankr.E.D.Pa.1985); *see generally* L. King, *6 Collier on Bankruptcy*, ¶ 707.03[3] (15th ed.rev. 1997).

(Docket entry # 10.) The trustee objected to this motion for compensation. The parties agree that on or about July 7, 1995,[4] the debtor filed an amended schedule C. Motion and Answer, ¶ 2. This amended exemption schedule, Ex. T–2, identified the following property interest as exempt: "Civil Action Settlement Cudeyro v. Cavalier, et al. July Term 1992, No. 1401 Court of Common Pleas, Philadelphia County." The basis for this particular exemption claim was identified as 11 U.S.C. § 522(d)(11)(D), and the debtor's exempt interest in this property was valued by the debtor at $55,000.00; the asset itself was also valued at $55,000.00. Ex. T–2.

On August 7, 1995, the trustee filed an objection to the debtor's amended exemption claim. Ex. T–3. In his objection, the trustee asserted that the debtor's claim of $55,000.00 as exempt under section 522(d)(11)(D) was excessive. *See generally In re Sidebotham*, 77 B.R. 504 (Bankr.E.D.Pa.1987); *In re Territo*, 36 B.R. 667 (Bankr.E.D.N.Y.1984).

On August 11, 1995, a hearing was held on the fee request of Kubert, Himmelstein & Associates, P.C. With the consent of the trustee, an order was entered which allowed this law firm compensation in the amount of $18,093.32 in fees and $720.00 in expenses "from the settlement in the amount of $55,-000.00 relating to Cudeyro v. Cavalier, et al. Court of Common Pleas. Term 1992". (Docket entry # 21.)

On September 27, 1995, a hearing was held on the trustee's objection to the debtor's amended exemption claim. This dispute was reported at the hearing as settled, and the parties filed a settlement stipulation on October 16, 1995; their settlement was approved by court order dated October 20, 1995. (Docket entry # 34.) By the terms of the settlement, the debtor was "allowed to exempt the sum of ... $11,630.00 ... from the personal injury settlement relating to *Cudeyro v. Cavalier* ... in the amount of $55,-000.00." This settlement agreement was signed by the trustee, the debtor and by debtor's counsel. Ex. T–4.

On December 1, 1995, an order was entered allowing compensation to the debtor's bankruptcy counsel in the amount of $900.00. (Docket entry # 37.) By a subsequent motion which was uncontested by any interested party, this fee allowance was increased to $2,025.00 on April 17, 1996.

The parties agree that the proceeds of the personal injury settlement were turned over to the chapter 7 trustee. From these proceeds he then disbursed funds to the debtor in an amount consistent with the settlement agreement reached earlier by the parties: $11,630.00. The trustee also distributed funds to the debtor's bankruptcy and personal injury counsel based upon the uncontested court orders mentioned earlier. Motion and Answer, ¶ 5. Exhibit T–10 demonstrates that the trustee possessed the remainder of the litigation proceeds, $24,178.78, in his account as of June 25, 1997.

Based upon these undistributed funds in his possession, the trustee sought to extend the deadline by which creditors could file proofs of claim. After a hearing, this motion was granted and a bar date of January 31, 1997 was established. (Docket entry # 63.) The parties agree that creditors have filed proofs of claim based upon the trustee's notice that funds for distribution are available. Motion and Answer, ¶ 6. Indeed, Ex. T–9 reflects that three unsecured proofs of claim have been filed totaling approximately $38,-000.00.

On February 18, 1997—after the trustee gained possession of the litigation proceeds, made certain distributions, extended the claims bar date, notified creditors and received certain proofs of claim—the debtor filed her second amendment to schedule C, which has triggered the instant litigation. Under this latest amendment, the debtor claimed as exempt the following property interest: "Civil Action Settlement Cudeyro v. Cavalier, et al., July Term 1992, No. 1401 Court of Common Pleas, Philadelphia County." The basis for this exemption claim is now 42 Pa.C.S.A. § 8124(c)(7); and the value

---

4. The docket entries date the filing of this amended schedule as August 2, 1995. (Docket entry # 15.)

of the property claimed as exempt remained $55,000.00. Ex. T–8.

In other words, the debtor's second amendment to schedule C seeks to undo her stipulation with the trustee and claim as exempt the entire proceeds of her personal injury litigation.[5] Further, while she earlier claimed the litigation proceeds as exempt under federal bankruptcy law, section 522(d), she now asserts Pennsylvania law as the basis for her exemption.

Finally, the parties agreed at the hearing that the sum of $55,000.00 constituted proceeds of an insurance policy held by one or more defendants in the personal injury litigation. The parties did not specify whether this litigation was settled prior to or after the debtor's bankruptcy filing.

## II.

The chapter 7 trustee participated at the hearing held on his objection to the debtor's second amended exemption claim. At the hearing he raised two distinct objections. First, he maintains that the debtor should not be permitted at this late date, in light of all that has already occurred, to claim the entire proceeds of her personal injury litigation as exempt. Second, he argues that even if the amendment is permitted, as a matter of Pennsylvania law the litigation proceeds are not exempt from her creditors. *See generally Lucius v. McLemore,* 741 F.2d 125 (6th Cir.1984) (the issues surrounding the allowance of the amendment are distinct from the allowance of the exemption); *Tignor v. Parkinson,* 729 F.2d 977 (4th Cir.1984) (same).

The United States trustee also participated at the hearing and indeed filed a posthearing memorandum. She takes no position on the propriety of the debtor's exemption claim under Pennsylvania law. However, the Unit-

ed States trustee strongly opposes the debtor's ability to amend her exemption claims at this time. The United States trustee expresses a fear that chapter 7 trustees will not aggressively and promptly administer cases—*i.e.,* oppose improper exemption claims; take steps to liquidate non-exempt assets—if chapter 7 debtors can amend exemption schedules after the chapter 7 trustee has acted. The United States trustee relies upon theories of waiver, estoppel, law of the case and prejudice in arguing that the debtor's second amendment to her exemption claims comes too late.

The debtor counters both objections. First, she argues that she has an absolute right to amend her exemption claims at any time prior to the closing of her case. Second, she maintains that 42 Pa.C.S.A. § 8124(c)(7) does indeed protect the proceeds of personal injury litigation from creditors, when those proceeds are derived from an insurer.[6] In support of this latter contention, the debtor cites to the bankruptcy decision *In re Lowenthal,* 203 B.R. 576 (Bankr. E.D.Pa.1996).[7]

These contentions should be considered in the order just stated. If the debtor is not entitled to amend her exemptions, then I need not reach the Pennsylvania law issue regarding the proper scope of 42 Pa.C.S.A. § 8124(c)(7).

## III.

Section 522(b) permits an individual debtor to claim property interests as exempt, either under relevant non-bankruptcy law (typically state law), section 522(b)(2), or under the exemptions provided in section 522(d). 11 U.S.C. § 522(b)(1); *see generally* L. King, 4 *Collier on Bankruptcy,*

---

5. Although her second amended objection claims the entire litigation proceeds as exempt, the debtor's answer to the trustee's objection states that "[t]he debtor is only attempting to exempt funds held currently by the Trustee, which is the balance of the funds remaining from her personal injury settlement." Answer, ¶ 8.

6. 42 Pa.C.S.A. § 8124(c)(7) provides:
 (c) Insurance proceeds.—The following property or other rights of the judgment debtor

shall be exempt from attachment or execution on a judgment:

 \* \* \*

(7) The net amount payable under any accident or disability insurance.

7. From the argument of counsel, it appears that the *Lowenthal* decision triggered the debtor's decision to amend her exemption claim in February 1997.

¶ 522.01 (15th ed. rev.1997).[8] Federal Rule of Bankruptcy Procedure 4003 explains that an exemption claim shall be asserted on the debtor's schedules. Presently, the official Bankruptcy Forms provide for such exemption claims on bankruptcy schedule C.

There is no statutory provision or procedural rule which expressly governs amendments to exemption claims, although Rule 4003(b) refers to objections to amended exemption claims and thus contemplates that such amendments can be made. However, Bankruptcy Rule 1009(a) states:

(a) General Right to Amend. A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

As exemption claims are asserted on schedule C, it is generally understood that the reference in Rule 1009(a) to the amendment of schedules in general permits a debtor to amend the scheduled exemption claims. *See generally, e.g., Lucius v. McLemore; Matter of Doan*, 672 F.2d 831 (11th Cir.1982). The first issues posed by this dispute are whether there are any restrictions upon a debtor's ability to amend and, if so, whether it is appropriate to apply such restrictions in these circumstances.

The language of Rule 1009(a) closely tracks that of its predecessor, former Bankruptcy Rule 110, which provided debtors a similar right to amend their petition, statements and schedules during the pendency of the bankruptcy case.[9] "Rule 110 has been adopted without substantive change as Rule 1009 of the (new) Federal Rules of Bankruptcy Procedure, effective August 1, 1983." *Lucius v. McLemore*, 741 F.2d 125, 126–27 (6th Cir.1984). *See, e.g., In re Osborn*, 24 F.3d 1199, 1206 (10th Cir.1994); *see also, e.g., In re Gonzalez*, 149 B.R. 9, 11 (Bankr.D.Mass. 1993), *vacated on other gnds. sub nom. Gonzalez v. First Nat. Bank of Boston*, 191 B.R. 2 (D.Mass.1996); *In re Jelinek*, 97 B.R. 429, 431 (Bankr.N.D.Ill.1989). Since former Rule 110 has been incorporated into present Rule 1009, the construction of the former rule may be germane to the proper interpretation of the current rule. *See generally, e.g., McFatter v. Cage*, 204 B.R. 503 (S.D.Texas 1996).

Former Rule 110, which had become effective in 1973, is in turn understood to have constituted a material change from its procedural antecedent, General Order 11. A brief overview of the evolution of a debtor's ability to amend schedules is worth mentioning.

General Order 11, one of the procedural provisions of the former Bankruptcy Act of 1898, was entitled "Amendments." It provided as follows:

The court may allow amendments to the petition and schedules on application of the petitioner. Amendments shall be printed or written, signed and verified, like original petitions and schedules, and filed in triplicate. If amendments are made to separate schedules, the same must be made separately, with proper references. In the application for leave to amend, the petitioner shall state the cause of the error in the paper originally filed.

8. A state may pass legislation precluding individuals from electing the bankruptcy exemptions found in section 522(d). 11 U.S.C. § 522(b)(1); *accord Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991); L. King, 4 *Collier on Bankruptcy*, ¶ 522.01 at 522–10, & n. 2 (15th rev. ed.1997). While most states have so acted, Pennsylvania has not done so. *See Kaplan v. First Options of Chicago, Inc.*, 189 B.R. 882, 888 N.6.(E.D.Pa.1995); *In re Lowenthal*, 203 B.R. at 580. Thus, debtors in Pennsylvania may choose between state and federal exemptions.

9. Rule 110 stated, in full, as follows:

A voluntary petition, schedule, or statement of affairs may be amended as a matter of course at any time before the case is closed. The court may, on application or motion of any party in interest or on its own initiative, order any voluntary petition, schedule, or statement of affairs to be amended. Every amendment under this rule shall be filed in the same number as required of the original paper, and the court shall give notice of the amendment to such persons as it may designate.

. This general order was understood to have provided the bankruptcy court with substantial oversight of the debtor's ability to amend, in that it required the debtor to demonstrate "cause" for permitting such amendment. *See, e.g., Fierman v. Frankfort Broom Co.,* 69 F.2d 827 (3d Cir.1934); *Burke v. Guarantee Title & Trust Co.,* 134 F. 562 (3d Cir.1905); *In re Teller,* 183 F.Supp. 946 (E.D.Pa.1960) (reversing lower court decision summarily denying debtor's unopposed petition to amend); *In re Von Kerm,* 135 F. 447 (E.D.Pa.1905) (debtor waived his right to a claim of exemption and was not permitted to offer an amendment to that claim). As the Third Circuit Court of Appeals noted, General Order 11 gave bankruptcy courts "substantial discretion to deny an amendment for which good cause had not been shown." *Matter of Gershenbaum,* 598 F.2d 779, 781 (3d Cir.1979); *accord Matter of Seeley Tube & Box Co.,* 219 F.2d 389, 391 (3d Cir.), *cert. denied,* 350 U.S. 821, 76 S.Ct. 46, 100 L.Ed. 734 (1955); *see generally* Henderson, 2 *Remington on Bankruptcy* § 578 at 45 (rev. ed.1956).

As just discussed, Bankruptcy Rule 110 succeeded this general order in 1973. The effect of this succession was material: "[u]nder the plain reading of Rule 110, a court ordinarily does not have discretion to deny leave to amend or to require a showing of good cause." *Tignor v. Parkinson,* 729 F.2d at 978; *Redmond v. Tuttle,* 698 F.2d 414, 416 (10th Cir.1983). Indeed, the Third Circuit explained that Rule 110 was intended "to end the discretion exercised by the bankruptcy courts under General Order 11." *Matter of Gershenbaum,* 598 F.2d at 781. The appellate court stated:

> This view [of General Order 11] was not adopted in Bankruptcy Rule 110.... The comment of the Advisory Committee on Bankruptcy Rules reveals that the rule was intended to end the discretion exercised by the bankruptcy courts under General Order 11.... When the bankrupt files an application to amend a voluntary petition in bankruptcy, the court's only role under Rule 110 is to decide who should be given notice of the amendment. It does not have discretion to deny leave to

amend or to require a showing of good cause.

'Gershenbaum's voluntary petition in bankruptcy was filed long after the date on which Rule 110 became effective, and the bankruptcy court was therefore obliged to allow the amendment "as a matter of course."

*Id.* (footnotes omitted); *see also Redmond v. Tuttle,* 698 F.2d at 417 ("Since the amendment was made before the case was closed, it must be permitted under rule 110").

While former Rule 110 was intended to delete the requirement that a debtor demonstrate "cause" to amend, and while present Rule 1009(a) incorporates Rule 110, it would be inexact to describe the debtor's right to amend under current Rule 1009(a) as "absolute." As described by a leading bankruptcy treatise:

> [B]efore the closing of the case the debtor may amend the exemption schedule to include property that had been omitted or improperly scheduled. The permissive approach to amendments has been construed to give courts no discretion to reject amendments *unless* the debtor acted in bad faith or concealed property, or the amendment would prejudice creditors.

L.King, 9 *Collier on Bankruptcy,* ¶ 1009.02 at 1009-2 to 1009-3 (15th ed. rev.1997) (footnotes omitted) (emphasis added); *accord id.,* ¶ 4003.02[2].

The interpretation just quoted—that the debtor has the right to amend her schedules absent a showing of bad faith or prejudice—has been adopted by every court of appeals to have considered the issue. *Accord, e.g., In re Reed,* 52 F.3d 334 (Table), 1995 WL 227389, *1 (9th Cir.1995); *In re Osborn,* 24 F.3d at 1206; *Hardage v. Herring Nat. Bank,* 837 F.2d 1319, 1324 (5th Cir.1988); *Payne v. Wood,* 775 F.2d 202, 205 (7th Cir. 1985), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986); *Lucius v. McLemore,* 741 F.2d at 127; *Tignor v. Parkinson,* 729 F.2d at 979; *Matter of Doan,* 672 F.2d at 833. Furthermore, I do not construe the Third Circuit's decision in *Matter of Gershenbaum* to compel a different result in this circuit.

I recognize that the court in *Matter of Gershenbaum* noted that "the court's only role under Rule 110 is to decide who should be given notice of the amendment. It does not have discretion to deny leave to amend or require a showing of good cause." *Id.,* 598 F.2d at 781. However, the *Gershenbaum* court was addressing the question whether a debtor had the right to amend his schedules so as to add an additional creditor of the estate pursuant to former Bankruptcy Rule 110. That court did not, then, have occasion to address the interplay of Rule 110 with that of former Bankruptcy Rule 403, which was entitled "Exemptions."

Under the procedures of Rule 403(b), the bankruptcy trustee was to file with the court, no later than 15 days after he or she was "qualified," a report of the debtor's claimed exemptions. "Any creditor of the bankruptcy may file objections to the [trustee's] report within 15 days after its filing...." Rule 403(c). *In re Santoro,* 3 B.R. 210 (Bankr.E.D.N.Y.1980), held that debtors "may not use Rule 110 to circumvent the express provisions to section 403(c) and 906(b) [governing the time within which a court may extend the time a debtor may act to amend]. To allow [debtors] to amend would in effect disregard the specific provisions of section[ ] 403(c)...." *Id.* at 212.[10]

Without now endorsing the analysis of *Santoro,* I do observe that the question addressed in *Matter of Gershenbaum*—whether a debtor in bankruptcy may amend his or her schedules so as to include an additional creditor—involved an analysis of procedural rules and policy considerations different from those governing the issue of amendment of exemption claims.[11]

Moreover, the court in *Matter of Gershenbaum* noted that the creditor whose name was to be added by amendment would not be prejudiced by such amendment, thus implying that the element of prejudice is an appropriate factor for consideration in permitting amendments of bankruptcy schedules:

> Brown [the objecting creditor] argues that it is unfair to a creditor to permit the bankruptcy to amend his petition at this late date and thereby broaden the scope of the original discharge. However, Brown has not pointed to any prejudice which he will suffer as a result of the amendment, which he would not have incurred if his debt had been listed in the petition for bankruptcy. He has not indicated that he has changed his position during the twenty-one months which elapsed between the bankruptcy and the amendment, nor has he alleged that he was damaged by the loss of an opportunity to participate in the bankruptcy proceeding.

*Matter of Gershenbaum,* 598 F.2d at 782.

Indeed, other courts in this circuit have read into the analysis of current Rule 1009 the limitations articulated in *Matter of Doan,* 672 F.2d at 833, which opinion stated: "We agree with this holding [of *In re Gershenbaum* ], with the limited caveat that a court might deny leave to amend on a showing of a debtor's bad faith or of prejudice to creditors." *See In re Nesser,* 206 B.R. 372, 374 (Bankr.W.D.Pa.1997) ("Leave to amend exemptions generally is denied only if the debtor has acted in bad faith, concealed assets, or if the amendment would prejudice creditors"); *In re Lockovich,* 150 B.R. 989, 990 (Bankr.W.D.Pa.1993) ("Generally, schedules 'may be amended by the debtor as a matter of course at any time before the case is closed.'.... An amendment may be denied, however, if there is bad faith by the debtor or prejudice to creditors"); *In re Kobaly,* 142 B.R. 743, 748–49 (Bankr.W.D.Pa.1992) (same); *see also In re Shaffer,* 92 B.R. 632 (Bankr.E.D.Pa.1988) (Scholl, B.J.) (objection to debtors' amended exemption claim is sustained when debtors sought to amend after the trustee liquidated the asset and made distribution to creditors).

**10.** The present right to object to an amended claim of exemptions is governed by the terms of Bankruptcy Rule 4003(b), which allows the filing of "objections to the list of property claimed as exempt within 30 days after ... the filing of any amendment to the list...."

**11.** The difference between these two concerns is highlighted by a comparison to the current law. *See generally Judd v. Wolfe,* 78 F.3d 110 (3d Cir.1996) (reopening case not necessary to discharge debt if statutory exceptions to discharge do not apply).

The notion that a debtor's right to amend her exemption schedules was not absolute under former Rule 110 and is not absolute under present Rule 1009(a) is also consistent with the approach taken to the amendment of pleadings in civil actions. Once a responsive pleading is filed, a party may amend a pleading only by "leave of court ... and leave shall be freely given when justice so requires." Fed. R.Civ. P. 15(a). This procedural rule has been construed as affording parties a broad right to amend. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord, e.g., In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1434 (3d Cir. 1997).

As noted in a respected bankruptcy treatise, the language of former Bankruptcy Rule 110 was derived from the civil procedural rule 15(a). L.King, 12 *Collier on Bankruptcy,* ¶ 110.02 (14th ed.1978). Thus, it is reasonable to assume that the drafters of Rule 110 intended to incorporate the limited restrictions on amendments implied in Fed. R.Civ.P. 15(a). Further, since Rule 1009(a) is a direct decedent of former Rule 110, those same restrictions on amendments should remain applicable.

In light of the virtual unanimous interpretation of Fed.R.Bankr.P. 1009(a) and the similarity between Fed.R.Bankr.P. 1009(a) and Fed.R.Civ.P. 15(a), I am persuaded that a debtor's proffered amendments to exemptions are not to be automatically allowed, but may be reviewed with the equitable gloss articulated by cases such as *Matter of Doan.* *Accord McFatter v. Cage,* 204 B.R. 503, 507 (S.D.Tex.1996) ("the central issue is whether Debtor should be permitted to amend his schedules to include the Property he has known about at all times and be permitted to claim a homestead exemption after the Trustee has spent time and resources to clear title to the Property. Only if such amendment is allowed is Debtor entitled to an opportunity to establish his homestead claim"). Conversely, unless prejudice or bad faith is demonstrated, the debtor's second amendment is permissible, as this bankruptcy case has not yet been closed.

IV.

Since amendments to schedules are generally permitted as a matter of course, it is incumbent upon the party objecting to the proffered amendment to demonstrate that "exceptional circumstances"—prejudice or bad faith—warrant denial of the opportunity to amend a debtor's exemption claims. *Tignor v. Parkinson,* 729 F.2d at 979; *see In re Kobaly,* 142 B.R. at 748.[12]

Although not much discussed in the case law, courts that have addressed the question of burdens of proof have uniformly held that the objecting party must establish bad faith on the part of the debtor, or prejudice inuring to the trustee or creditors, by a sufficiently clear showing. *In re Magallanes,* 96 B.R. 253, 256 (9th Cir. BAP 1988) (discussing bad faith); *In re Brown,* 56 B.R. 954, 958 (E.D.Mich.1986 (same)); *In re Kobaly,* 142 B.R. at 748 (both bad faith and prejudice addressed); *In re Fabian,* 122 B.R. 678, 682 (Bankr.W.D.Pa.1990) (same).

The bad faith on the part of the debtor that may cause a court to disallow an exemption amendment generally is identified as some sort of attempt to conceal an asset. *See Hardage v. Herring Nat. Bank,* 837 F.2d 1319, 1324 (5th Cir.1988); *Matter of Doan,* 672 F.2d at 833 ("concealment of an asset will bar exemption of that asset"); *see also Payne v. Wood,* 775 F.2d at 205 (permission to amend exemptions "most unlikely" to be

---

12. One bankruptcy court "has articulated a 4-part test to decide whether debtors will be permitted to switch their exemptions." *Matter of Strasma,* 26 B.R. 449, 450–51 (Bankr.W.D.Wis. 1983). According to that court, the "first two factors [prejudice accruing to adverse party if amendment allowed, and undue hardship accruing to the debtor who has acted in good faith if the amendment is not allowed] are the most important."

permitted, where debtors apparently had attempted to conceal assets). Here, no party has argued that Ms. Cudeyro has acted in bad faith.[13]

Both the chapter 7 trustee and the United States trustee do urge, however, that prejudice would result by the allowance of the proffered schedule C amendment.

One element in this analysis appears to be the existence *vel non* of reliance made upon the debtor's exemption selection prior to the proffered amendment. Prejudice may arise, for example, where a trustee has engaged in efforts to sell certain property, which efforts he or she might have foregone had the debtor initially claimed such property as exempt. That is, in those instances the trustee may be understood to have acted in reliance upon the debtor's initial schedules, and having taken such actions may be prejudiced if the amendments were allowed. *See, e.g., Matter of Eldridge,* 15

B.R. 594, 595 (Bankr.S.D.N.Y.1981) (debtors attempted to change exemptions after trustee had contracted to sell the subject property); *In re Santoro,* 3 B.R. at 212 (debtors attempted to claim exemptions after the trustee had sold subject property); *see also Hardage v. Herring Nat. Bank,* 837 F.2d at 1324 (prejudice may occur if creditors have detrimentally relied upon the debtor's original exemption claim).

Similarly, "several cases have established that, if a distribution of assets has already been made on the basis of exemptions previously claimed, then it is unfairly prejudicial to creditors, and too late to change exemptions." *In re Shaffer,* 92 B.R. at 634; *see, e.g., In re Santoro.* In a related fashion, it has also been noted that debtors in bankruptcy "should not be allowed to amend their exemptions after they have sought relief relating to the originally claimed exemp-

**13.** Since neither the chapter 7 trustee nor the United States trustee raise the issue of bad faith, I shall assume that the personal injury lawsuit involving Ms. Cudeyro was settled after she filed her chapter 7 petition on November 4, 1993. The evidentiary record is silent on this point, although one might infer from the fee request made by the debtor's personal injury attorney in 1995 that the settlement occurred around the time of that application. But if it were otherwise—that is, if she settled her personal injury claim for $55,000.00 before her bankruptcy filing—then it would be difficult for her to explain how she could have initially valued this asset as "unknown". And the intentional, improper disclosure of the value of this asset may well be considered as "bad faith" conduct. *See generally Matter of Yonikus,* 996 F.2d 866 (7th Cir.1993) (debtor willfully failed to disclose his worker's compensation claim and so was not permitted to amend his exemption claims to include this asset).

Were I to permit the debtor to amend her *exemption claim and thereby address the merits* of the state law exemption, this factual assumption could also be relevant to the merits of the debtor's amended exemption claim.

By virtue of 11 U.S.C. § 522(a)(2) and (b)(2)(A), exemption claims are determined as of the date the bankruptcy case commenced. *See, e.g., Matter of Sandoval,* 103 F.3d 20 (5th Cir. 1997); *see also Matter of Kazi,* 985 F.2d 318 (7th Cir.1993) ("Upon commencement of an action in bankruptcy, all property in which the debtor has a legal or equitable interest becomes property of the bankruptcy estate, subject to certain exceptions.... Once the property becomes part of the bankruptcy estate, the debtor is allowed to claim

as exempt certain property interests and the trustee or creditors are given an opportunity to object to the claimed exemptions"). If the debtor here had not settled her personal injury litigation as of November 4, 1993, she may not have had on that date any interest in proceeds of an accident insurance policy.

The parties informed me that the source of the settlement proceeds was an insurer of one or more defendants. If so, it may be difficult to argue that she had any interest in insurance proceeds before the date of settlement. Before settlement or entry of a judgment in plaintiff's favor, the defendant's insurer would have no duty to pay any sums to the debtor. *See, e.g., Butterfield v. Giuntoli,* 448 Pa.Super. 1, 12, 670 A.2d 646 (1995), *appeal denied without op. sub nom. Butterfield v. Mikuta,* 546 Pa. 635, 683 A.2d 875 (1996). However, even before settlement or the entry of a judgment, the debtor clearly had a property interest in the prepetition tort claim raised against the defendants which was an asset of the estate. *See, e.g., In re Bronner,* 135 B.R. 645, 647 (9th Cir. BAP 1992) ("A debtor's claim for injuries to the person, even if unliquidated at the time the petition was filed, is property of the bankruptcy estate as of the commencement of the case"). But this interest is distinct from an interest in insurance proceeds. It is by virtue of section 541(a)(6) that the estate's interest in the litigation was transferred to the proceeds of that asset.

Even if one were to assume that this type of insurance proceeds was insulated by state law, if the debtor had no such interest in insurance proceeds at the time of her bankruptcy filing, then she may have no exemption claim under 42 Pa.C.S.A. § 8124(c)(7).

tion." *In re Gonzalez,* 149 B.R. at 11 (debtors not entitled to amend after unsuccessfully seeking relief on originally claimed exemption).

■ Prejudice has also been found to accrue where a debtor exhibits "inordinate delay" in amending his exemption schedules. *In re Jelinek,* 97 B.R. at 432 (discussing *In re Patel,* 43 B.R. 500 (N.D.Ill.1984)). As stated by one court, prejudice may be found to attend such delay:

> To allow a debtor to amend his claim of exemption at this late date would clearly be inequitable and would hinder the diligent administration of the bankruptcy estate by the bankruptcy trustee. Because to allow the Debtor to amend his claim of exemption at this late date would have an adverse impact on creditors whose rights have attached to the assets of the bankruptcy estate and because late amendment to the Debtor's claim of exemptions would hinder the diligent administration of the bankruptcy estate by the Trustee, the amendment is not seasonable and, therefore, not allowed.

*In re Snow,* 21 B.R. 598, 600 (Bankr.E.D.Cal. 1982). Phrased somewhat differently, "[a]t some point, the debtor's election of either the state or federal exemptions must become irrevocable so as to avoid any unfair prejudice to the trustee and unsecured creditors." *In re Brewer,* 17 B.R. 186, 188 (Bankr. M.D.Tenn.), *aff'd,* 22 B.R. 983 (M.D.Tenn. 1982); *see In re Duggan,* 4 B.R. 709, 711 (Bankr.N.D.Tex.1980) ("[a]t some point the right to switch from one system to another must end and there be some finality to a choice);" *In re Korff,* 14 B.R. 189, 193 (Bankr.E.D.Mich.1981); *see also In re Reed,* 1995 WL 227389 (9th Cir.1995) (debtor might have been entitled to amend exemptions, but lost that entitlement by "plung[ing] the bankruptcy estate into lengthy litigation," and by not requesting his amendment in a seasonable manner).

I also note that a treatise discussing the former Bankruptcy Act and its concomitant rules analyzed issues surrounding the claiming and awarding of exemptions. *See generally* L. King, 1A *Collier on Bankruptcy,* ¶¶ 6.18, 6.19 (14th ed.1978). As explained in that analysis, the debtor in bankruptcy may rectify an initial failure to claim an exemption "by seasonable amendment," thus stating by negative implication that an "unseasonable" amendment may not be allowed.

■ Against this backdrop, I am convinced that the instant factual setting presents a situation in which Ms. Cudeyro should not be permitted to amend her scheduled exemptions. The objectors have presented sufficiently clear evidence of prejudice that would be caused by this amendment.

This bankruptcy case has witnessed an objection raised by the trustee to a prior claimed exemption, over which litigation ensued and a settlement was reached among the parties. Once the debtor committed herself to this settlement of the exemption question, and the trustee and creditors took actions in reliance upon this settlement, I conclude that it would be inappropriate to allow the debtor a further amendment. I find that this prejudice results from an amalgam of considerations.

First, since the debtor has litigated and settled the question of her allowed exemptions, her present request to amend must be considered carefully. Voluntary settlements of litigation are understood to be final and binding agreements.

The debtor had the option to claim her state law exemptions but elected not to do so. Instead, she chose the federal exemptions and sought to claim the entire litigation proceeds as exempt, despite the cap then found in section 522(d)(11)(D) of $7,500.00. When the trustee objected, the debtor first sought to dismiss her bankruptcy case, quite possibly to obtain the entire litigation proceeds. Even though the debtor's efforts to garner the entire settlement fund proved unsuccessful, the trustee was still willing to forge an agreement which provided her with a dividend from the proceeds almost equal to the maximum amount which she could obtain by virtue of sections 522(d)(5) and (d)(11)(D) then in effect.[14]

---

14. Section 522(d)(5), as applicable to this case, permitted a federal "wildcard" exemption not

By virtue of this settlement, the debtor and the trustee avoided litigation over the precise application of section 522(d)(11)(D) to the debtor's personal injury claim, the trustee essentially conceding the maximum recovery. *See generally In re Gregoire,* 210 B.R. 432 (Bankr.D.R.I.1997) (proceeds of personal injury claim were not exempt as the debtor failed to demonstrate the payment was compensation for actual bodily injury as opposed to pain and suffering or lost wages).

 There is a strong public policy which favors the settlement of disputes and the avoidance of costly and time-consuming litigation. *E.g., Pugh v. Super Fresh Food Markets, Inc.,* 640 F.Supp. 1306 (E.D.Pa. 1986); *Rosso v. Foodsales, Inc.,* 500 F.Supp. 274 (E.D.Pa.1980). A settlement agreement is contractual in nature; the essential ingredient of a binding agreement is the parties' mutual assent to the terms and conditions of the settlement. *See Macy v. United States,* 557 F.2d 391 (3d Cir.1977); *Pugh.* The agreement remains binding even if a party has a change of heart after he or she has agreed to its terms but before the terms are reduced to writing. *E.g., Pugh; see In re Paolino,* 78 B.R. 85, 89 (Bankr.E.D.Pa.1987).

To allow the debtor to amend her exemption claim at this time would essentially allow her to rescind her compromise agreement with the trustee. I do not construe Rule 1009(a) to allow the debtor to do indirectly what she cannot do directly: breach her settlement with the trustee.

Furthermore, in reliance upon this settlement, the trustee has collected the proceeds, made certain distributions, moved for an extension of time for the filing of proofs of claim, and has given notice to creditors that funds were available. In response to the trustee's notice certain claims have been filed by creditors. Moreover, the trustee may well have withdrawn his opposition to compensation to the debtor's personal injury attorney in light of the settlement reached with the debtor. *See* Fed.R.Bankr.P. 6009 (authorizing the trustee, not the debtor, to prosecute pending litigation involving the debtor).

 I do not suggest that whenever a chapter 7 trustee acts upon an initial exemption claim that the debtor is always barred from any amendment. *See generally In re Fournier,* 169 B.R. 282 (Bankr.D.Conn.1994). But here, where the trustee initiated litigation with the debtor on the question, and where the trustee negotiated a settlement, those steps—when added to the trustee's actions taken in reliance on the settlement—result in unfair prejudice to the estate by requiring it to further litigate the debtor's second effort to amend her exemption schedule (and, as a result, experience further delay the administration of this case). *See Matter of Houck,* 9 B.R. 460, 463–64 (Bankr. E.D.Mich.1981); *In re Cobb,* 3 B.R. 150, 151 (Bankr.N.D.Cal.1980) ("a proper claim of exemption under either federal or state law becomes final ..., if there is an objection, when the order [settling the objection] becomes final ..."); *see also In re Korff* (amendment disallowed, where sought after trustee initiated objection to exemption).

Clearly, a component of this prejudice arises with respect to the chapter 7 trustee, who has labored to administer the bankruptcy case for the benefit of creditors, and who may not receive any compensation for his efforts should the amendment be allowed (and the exemption ultimately upheld against objection). *Compare Matter of Boyer,* 7 B.R. 930, 931–32 (Bankr.D.Idaho 1981) (allowing the amendment requested by debtor, which was not claimed by reason of excusable neglect, but conditioned the amendment on the debtor's payment to the trustee of his reasonable costs).

Buttressing this concern is the policy that bankruptcy cases should be promptly administered. As the Supreme Court noted in *Taylor v. Freeland & Kronz,* 503 U.S. 638,

---

greater than $400.00; in addition, this provision allowed a debtor to claim an unused homestead exemption up to $3,750.00. Section 522(d)(11)(D) permitted a federal exemption "on account of bodily injury" not to exceed $7,500.00. *See generally In re Sidebotham,* 77 B.R. 504, 506 (Bankr.E.D.Pa.1987) (based on record, court unable to determine what amount may be exempted under section 522(d)(11)(D)). These maximum federal exemptions, when aggregated, total $11,650.00, or $20.00 less than was paid to the debtor under the terms of the trustee's settlement of his objection to the debtor's exemption claim.

112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), a chapter 7 trustee may not object to a claimed exemption, even if the debtor had no colorable basis for claiming the exemption, if its validity is not contested within the period afforded by Fed.R.Bankr.P. 4003. "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Id.,* 503 U.S. at 644, 112 S.Ct. at 1648. Here, the bankruptcy trustee acted in a timely fashion and obtained for the estate a reasonable division of the proceeds of the contested asset. To now permit the debtor to amend her exemption claim would undermine the policy of prompt administration embodied in Rule 4003. *See, e.g., In re Cobb; In re Duggan,* 4 B.R. at 711 ("At some point the right to switch from one system to another must end and there be some finality to a choice").

For all the foregoing reasons, I agree with the objectors that the instant request to amend exemptions, which was filed more than three years after the bankruptcy case commenced, would be prejudicial if granted. Therefore, an order shall be entered consistent with this opinion, denying the debtor's request to amend her exemptions a second time. *See In re Calder,* 973 F.2d 862 (10th Cir.1992); *In re Bowman,* 1996 WL 529233 (Bankr.D.Md.1996) (where the bankruptcy trustee had liquidated a debtor's personal injury claim, the debtor was not permitted to amend her exemption claim to include the proceeds of this asset, when the amendment was sought more than three years after the commencement of the case); *In re Jelinek* (debtor denied the right to amend his exemption claim, where he sought to exempt the proceeds of condemnation litigation only after the trustee had negotiated a settlement of the litigation and obtained the proceeds therefrom).

### ORDER

AND NOW, this 20th day of October, 1997, for the reasons stated in the foregoing memorandum opinion, the objections of the chapter 7 trustee and United States trustee to the debtor's second amendment to Schedule C, filed on February 18, 1997, are hereby sustained. The amendment is not permitted as prejudicial.