**In re Kevin P. KOLLAR and Lori P. Kollar, Debtors.**

**Bankruptcy No. 96–32442DWS.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 6, 1998.

Ronald H. Beifeld, Fox & Fox, Norristown, PA, for Debtors.

Eric L. Frank, Miller, Frank & Miller, Philadelphia, PA, for Chapter 7 Trustee.

Mitchell W. Miller, Philadelphia, for Chapter 7 Trustee.

Joseph Minni, Philadelphia, PA, for U.S. Trustee.

## *OPINION*

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Objection of Mitchell W. Miller, the Chapter 7 Trustee (the "Trustee") to Debtors' Exemptions. Specifically, the Trustee objects to the exemption claimed by Debtors in the potential proceeds of a personal injury lawsuit. The Debtors contend that this asset is exempt by reason of 42 Pa.C.S. § 8124(c)(7) which insulates the

net amount payable under any accident or disability insurance from the claims of creditors of a debtor that has elected the state exemptions in his or her bankruptcy case, 11 U.S.C. § 522(d), (b), and rely for support of their position on the decision of my colleague Judge Stephen Raslavich in *In re Lowenthal,* 203 B.R. 576 (Bankr.E.D.Pa.1996).[1] The Trustee urges this Court to decline to follow *Lowenthal* or in the alternative, to distinguish it on the facts *sub judice.*

The record in this contested matter was presented by a Stipulation of Facts (the "Stipulation"). The relevant facts are not in dispute and will be summarized below.

## BACKGROUND

The Debtors filed a voluntary petition under chapter 13 of the Bankruptcy Code on December 23, 1996. The bankruptcy case was converted to chapter 7 on May 14, 1997. Stipulation ¶¶ 1–2.

On or about March 21, 1996, prior to the filing of the bankruptcy case, Mr. Kollar sustained injuries when he fell on the premises of Maiden Creek TV and Appliance ("Maiden Creek"). On April 7, 1997, after the commencement of their bankruptcy case, the Debtors filed a complaint ("the Complaint") against Maiden Creek in the Court of Common Pleas, Montgomery County, Pennsylvania, ("the Personal Injury Action"). The Complaint alleges that Mr. Kollar's injuries were caused by Maiden Creek's carelessness and negligence and asserts claims for damages against Maiden Creek on behalf of both Mr. and Mrs. Kollar. The Debtors requested damages in an unliquidated amount. Stipulation ¶¶ 4–7 and Exhibit "A" thereto.[2]

---

**1.** When decided in 1996, Judge Raslavich noted that the case presented an issue of first impression. Since then, no other court has been squarely presented with this question although it was raised in a case decided in late 1997 by Judge Fox, *In re Cudeyro,* 213 B.R. 910 (Bankr. E.D.Pa.1997). In *Cudeyro,* the debtor had belatedly sought to amend her schedules to assert a § 8124(c) state exemption, apparently motivated to do so by her counsel's awareness of the *Lowenthal* ruling. However, because the Court in *Cudeyro* held that the debtor had waived the right to amend her exemption, it expressly did not reach the Pennsylvania law issue regarding the proper scope of 42 Pa.C.S.A. § 8124(c)(7).

*Id.* at 914. Notwithstanding that the *Lowenthal* decision remains the only case construing § 8124(c) to date, the Trustee has focused upon a footnote in *Cudeyro* that he reads as support for the result he seeks. *See id.* at 918 n. 13.

**2.** In Count I of the Complaint, Mr. Kollar requests judgment "in a sum in excess of Fifty Thousand ($50,000) Dollars." Count II of the Complaint sets forth Mrs. Kollar's loss of consortium claim against Maiden Creek. The copy of the Complaint attached as Exhibit "A" appears to be missing the ad damnum clause for Count II and the attorney's signature page, making it impossible to state unequivocally that Mrs. Kollar's

The Debtors listed the Personal Injury Action in Schedule B¶ 20 of their bankruptcy schedules. In their Amended Schedule B, the Debtors valued the Personal Injury Action as "$500,000 to $750,000." In Schedule C, the Debtors claimed the Personal Injury Action as exempt pursuant to 42 Pa.C.S. § 8124(c). The Trustee filed a timely objection to the Debtors' claimed exemption of the Personal Injury Action. Stipulation ¶¶ 7–9.

On the date of the accident giving rise to the Personal Injury Action, Maiden Creek was the owner of an insurance policy issued by Donegal Mutual Insurance Co. ("Donegal"), identified as Policy No. BOP 009913 08 (the "Policy"). The Policy contains a limitation of liability of $1,000,000 per occurrence. Stipulation ¶¶ 10, 14(b) and Exhibit "B" thereto. The Debtors are neither the owners nor the insureds under the Policy. Stipulation ¶ 11.

The Policy consists of fourteen parts, one of which is entitled "Businessowners Liability Coverage Form" ("the Liability Provisions"). Stipulation ¶ 12. The Liability Provisions of the Policy provide, *inter alia*, that Donegal "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies". *See* Exhibit "B," Liability Provisions at 1. The Policy defines "the insured" as Maiden Creek. *See* Stipulation ¶ 13(b) and ¶ 14(a). The Liability Provisions of the Policy explicitly prohibit anyone from joining Donegal in a lawsuit for damages against Donegal's insured or suing Donegal "on the policy," except to recover on an agreed settlement or a final judgment against an insured obtained after an actual trial. *See* Exhibit "B," Liability Provisions at 8.

Trial of the Personal Injury Action has not been scheduled in the Court of Common Pleas. It is probable that it will be held between January 1999 and July 1999. Stipulation ¶ 15.

## DISCUSSION

This contested matter requires me to decide whether Chapter 7 debtors may utilize the state exemption for proceeds of certain insurance, 42 Pa.C.S. § 8124(c)(7), to insulate their unliquidated claim for personal injury against claims of creditors of their bankruptcy estate. That statute provides in pertinent part:

> The following property or other rights of the judgment debtor shall be exempt from attachment or execution on a judgment:
>
> .    .    .    .    .
>
> (7) The net amount payable under any accident or disability insurance.

In support of their claimed exemption, Debtors rely on the *Lowenthal* decision in which Judge Raslavich construed § 8124(c)(7) to allow the exemption of the proceeds of a settled judgment payable from the judgment debtor's insurance policy. In *Lowenthal*, the Debtor instituted a lawsuit against Horace Sheppard, Sr. in October 1994 arising from an automobile accident which occurred in November 1992. During the pendency of the litigation and before judgment was entered on April 3, 1996, the Debtor filed a petition under Chapter 7, *i.e.*, on February 13, 1996. Thus, like the instant case, the nature of the asset on the date the petition was filed was an unliquidated claim against an alleged tortfeasor owning insurance to cover a potential damage award.[3] Ultimately the Debtor accepted a settlement of the judgment amount to expedite payment

---

claim is unliquidated. However, given the nature of the claim, I agree with the Trustee that it is unlikely that the Complaint requested a liquidated sum in Count II.

**3.** However, in this case, the Kollars' claim against Maiden Creek had not been asserted in a lawsuit at the time the bankruptcy case was filed. Moreover, at this date, the lawsuit which they filed post-petition has not gone to trial or been settled. The latter factual difference is noted by the Trustee who observes that by the time the contested matter was litigated in *Lowenthal*, the

personal injury claim had been reduced to judgment and the judgment proceeds had been paid from Sheppard's insurance policy whereas here no proceeds are presently payable. On this basis, the Trustee suggests, albeit without conviction or enthusiasm, that I could distinguish *Lowenthal* as limited to a liquidated personal injury claim and thereby reconcile it with a contrary ruling herein. For the reasons discussed below, I find this factual distinction to be irrelevant to my analysis and therefore decline the Trustee's invitation.

and avoid appeal by Sheppard. This amount was paid to Debtor by Sheppard's insurance company pursuant to his accident liability policy and apparently first disclosed to the Chapter 7 trustee at the first meeting of creditors held under § 341 on May 6, 1996. Thereafter, on May 9, 1996, the Debtor filed an amended Schedule C which listed "[p]roceeds of litigation re: auto accident *Lowenthal v. Sheppard, et al.*" as exempt property under 42 Pa.C.S.A. § 8124(c)(7). *Id.* at 578.

The Lowenthal Chapter 7 trustee raised two arguments in support of her objection to the claimed objection: (1) the payment should be viewed as litigation proceeds, rather than an amount paid under any accident policy and (2) even if construed as a payment under an insurance policy, this payment, being one under a third party's policy and not the debtor's, would not be covered by the exemption. The Court rejected both these contentions.[4] Addressing the first contention, the Court stated:

> Despite the apparent symmetry between the admitted facts in this case and the language of 42 Pa.C.S.A. § 8124(c)(7), the Trustee attempts to remove the above payment of insurance monies to the Debtor from the purview of the statute by recasting it as a payment of litigation proceeds. This argument, however, is supported neither by the plain language of the statute, nor by citation to authority. The Court observes that nothing within the language of the statute itself limits its application, as the Trustee would apparently have it, to only the net amount payable under any accident insurance prior to a determination of liability at trial. On the contrary, it does not appear to be of any consequence for purposes of 42 Pa.C.S.A. § 8124(c)(7) whether the insurer making the payment elects to do so before or after trial. For instance, circumstances can be imagined in which an insurer might be willing to render payment on an accident claim prior to trial, *i.e.*, where the insured's liability is clear or uncontested, just as easily as it

can be imagined under other circumstances that it would be more prudent for the insurer to await a determination at trial, *i.e.*, where liability is contested, before making payment on a prospective claim. In either case, however, the source of the payment—the insured's accident insurance policy—is the same. Under the plain language of 42 Pa.C.S.A. § 8124(c)(7), therefore, it makes no difference whether the payment for which an exemption is claimed is made before or after trial as long as the source of the payment, as in the instant case, is an accident insurance policy.

*Id.* at 582. In arguing that the asset to be exempted was litigation proceeds and not payment under an insurance policy, the Lowenthal trustee apparently accepted that the changed character of the asset as reflected in the amended Schedule C filed after the § 341 meeting (*i.e.*, litigation proceeds not unliquidated claim) was to be considered by the Court in ruling on her objection. The Lowenthal trustee did not raise, and the *Lowenthal* Court therefore did not address, what I find to be the dispositive argument raised by this Trustee. It can be succinctly stated as follows.

■ The commencement of a case under title 11 is the point in time when a debtor's estate is created, 11 U.S.C. § 541(a), and when the exemptions from that estate are determined. *Cudeyro*, 213 B.R. at 918 n. 13 ("By virtue of 11 U.S.C. § 522(a)(2) and (b)(2)(A), exemptions claims are determined as of the date the bankruptcy case commenced.") *See also In re Peterson*, 897 F.2d 935, 937 (8th Cir.1990) (Bankruptcy exemptions are "fixed on the date of filing" and "only . . . the law and facts as they exist[ed] on the date of filing the petition" are to be considered); *In re Williamson*, 804 F.2d 1355, 1358 (5th Cir.1986) ("Section 522(b)(2)(A) provides that the individual debtors may exempt from property of the estate any property that is exempt under federal, state or local law applicable on the

---

**4.** The Trustee asserts these same two grounds here. Since I concur that the unliquidated personal injury claim is not a payment under an insurance policy, I need not reach the second ground that he asserts and opine as to whether

the Pennsylvania exemption statute is limited to policies owned by the debtor or may be construed, as the *Lowenthal* Court did, to include policies owned by third parties who are liable to the debtor.

filing date of the petition."); *In re Bronner*, 135 B.R. 645, 647 (9th Cir. BAP 1992) ("A debtor's rights in property claimed as exempt are defined on the date the petition is filed."); *In re Pavich*, 191 B.R. 838, 846 (Bankr.E.D.Cal.1996) ("[T]he right to exemptions is determined by the facts as they existed on the bankruptcy petition filing date."); *In re Combs*, 166 B.R. 417, 420 (Bankr.N.D.Cal.1994) ("Because exemption rights change from time to time, courts have frequently been asked to decide what date determines a debtor's exemption rights. The general rule is well established. Exemption rights are determined as of the date of the bankruptcy petition."); *In re Sajkowski*, 49 B.R. 37, 39 (Bankr.D.R.I.1985) ("The filing of the bankruptcy petition constitutes the 'line of cleavage' at which exemptions are determined."); *In re Friedman*, 38 B.R. 275, 276 (Bankr.E.D.Pa.1984) ("It is hornbook law that a debtor's exemptions are determined as of the time of the filing of his petition.").[5]

■■■ On the date of their filing under Chapter 13 and when the case was converted to Chapter 7, the Debtors' asset was an unliquidated tort claim.[6] A debtor's interest in an unliquidated tort claim is distinct from an interest in insurance proceeds. *Cudeyro*, 213 B.R. at 918 n. 13. This is consistent with Pennsylvania law that an injured party cannot maintain a direct action against an insurance company prior to a finding of liability on the part of the insured defendant absent a statutory or policy provision which so allows. *Philadelphia Forrest Hills Corp. v. Bitumi-*nous *Casualty Corporation*, 208 Pa.Super. 461, 463, 222 A.2d 493, 494 (1966). *Accord Aetna Insurance Co. v. Pennsylvania Manufacturers Association Insurance Co.*, 456 F.Supp. 627 (E.D.Pa.1978). No statute provides an exception to this general rule here, and the Policy, rather than allowing suit, expressly prohibits anyone from joining Donegal in a lawsuit for damages against Donegal's insured (*i.e.*, Maiden Creek) or suing Donegal "on the policy," except to recover on an agreed upon settlement or a final judgment against an insured after an actual trial. Stipulation, Exhibit B. Thus, at a minimum, Debtors would have had to have reduced their claim to judgment or stipulated settlement by the time the case was commenced to have an interest in insurance proceeds.[7] Since they had not even filed a lawsuit by the time the Chapter 13 case was commenced, it is unquestionable that they did not have a right to payment under an insurance policy.

In the absence of a valid exemption claim, the Trustee will administer the asset by prosecuting the lawsuit to its conclusion. Admittedly at some point the claim may ripen into a judgment or settlement and in such case, there would be a claim for payment under the Policy. However, because a debtor's exemptions are determined as of the commencement of a case, the changing character of the asset is legally irrelevant. Courts consistently hold that a post-petition change of circumstances will not affect the determination of the allowability and amount

---

**5.** Many of these cases cite an old United States Supreme Court case, *White v. Stump*, 266 U.S. 310, 312–13, 45 S.Ct. 103, 103–04, 69 L.Ed. 301 (1924), for the following assertion:

> [T]he point in time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed.... When the law speaks of property which is exempt and of rights to exemptions it of course refers to some point in time. In our opinion, this point in time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors and the trustee in other particulars are fixed.

*Id.* at 313, 45 S.Ct. at 104. While at least one case has questioned the applicability of *White* to post–1978 Code cases involving federal exemptions, it does not question the rule as applied to

state exemptions. *Matter of Patterson*, 825 F.2d 1140, 1143–45 (7th Cir.1987).

**6.** The question of the dispositive date for determination of exemptions when a case is converted has been addressed by a number of courts. *See, e.g., Matter of Sandoval*, 103 F.3d 20, 22–23 (5th Cir.1997) (right to exemptions is determined by facts as they existed on date of original bankruptcy petition and not date of conversion). However, that issue is not raised here where the asset has not changed its character between the date of the Chapter 13 filing and the conversion to Chapter 7.

**7.** I state "at a minimum" because I do not decide the question of whether the insurance policy can be owned by the tortfeasor or must be one owned by the debtor in order to secure the protection of § 8124(c)(7).

of an exemption. *E.g., Peterson, supra* (debtor's death after case was filed did not deprive him of his right to the homestead exemption since only facts existing on the date of filing are relevant to determining whether a debtor qualifies for a claimed exemption); *In re Lindsey,* 94 B.R. 723, 724 (Bankr.S.D.Ala.1988)(Because exemptions are determined as of the date of filing, the homestead exemption is not lost by the debtors' subsequent departure from the property.).

The Debtors, although permitted the opportunity to file a response to the Trustee's brief, offer no rejoinder to the Trustee's arguments, relying instead on *Lowenthal* which they state speaks for itself and resolves the same arguments. Debtors' Memorandum at 4. As stated above, *Lowenthal* does not address the issue on which I base my decision, and I can only assume Debtors are silent on this point because, in good faith, they cannot refute the point.