In re Larry CLARK and Alberta
Clark, Debtors.

Henry Ray Pope III, Trustee, Plaintiff,

v.

Larry Clark, Alberta Clark and Toni
M. Cherry, Defendants.

Henry Ray Pope III, Trustee, Movant,

v.

Larry Clark and Alberta
Clark, Respondents.

Henry Ray Pope III, Trustee, Movant,

v.

Larry Clark and Alberta
Clark, Respondents.

Bankruptcy No. 93–10033.
Adversary No. 00–1095.
Motion Nos. HRP–1(2000),
HRP–1(2001).

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 21, 2002.

Henry Ray Pope III, Esq., Clarion, PA, Trustee and Attorney Pro se.

Toni M. Cherry, Esq., Dubois, PA, Attorney Pro se and for Larry and Alberta Clark, Debtors.

## OPINION[1]

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Larry and Alberta Clark ("Debtors") filed a voluntary Petition under Chapter 7 of the Bankruptcy Code on January 19, 1993 (the "Filing Date"). Henry Ray Pope III, Esq. ("Trustee") serves as Bankruptcy Trustee. As of the Filing Date, Alberta Clark was the Plaintiff in a personal injury case against the V.F.W. (the "PI Case"). Attorney Toni M. Cherry ("Cherry") represented the Plaintiff–Debtor in the PI Case which was pending in the Court of Common Pleas of Clarion County, Pennsylvania ("State Court") at No. 1479 C.D. 1992.

The PI Case settled in May, 1997 for $21,000 without the knowledge of the Trustee. The proceeds of the settlement were divided—$12,883.69 to the Debtors and $8,116.31 to Cherry for fees and expenses.

The Trustee brings the within COMPLAINT TO COMPEL TURNOVER OF PROPERTY ("Complaint") for return of the $8,116.31 in proceeds that Cherry received from the settlement. The Trustee asserts that Cherry failed to seek Court approval for her engagement as counsel and that without such approval, Cherry is not entitled to compensation and must return all monies received.

In response to the Complaint, Cherry asserts that the Trustee is precluded from obtaining a turnover of the proceeds because there was no timely objection to the Debtors' claimed exemption in the proceeds; that the Trustee's failure to join in the PI Case constituted an abandonment entitling the Debtors to the entire settlement; that the Trustee's action is time-barred; and that the Trustee's action is barred by laches.

Separate motions are pending against the Debtors at Motion Nos. HRP–1(2000) and HRP–1(2001) in which the Trustee seeks to require Debtors to turn over the portion of the settlement proceeds which

---

1. This Opinion constitutes this Court's findings of fact and conclusions of law.

they received and to disallow their claim and amended claim of exemption.

A trial/evidentiary hearing on the Complaint was held on April 27, 2000. A further hearing on the Motions was held on June 18, 2001. Post-trial briefs have been filed. The issues are ripe for decision.

### Facts

The original bankruptcy schedules filed by Debtors to accompany the Petition do not disclose the PI Case as an asset on Schedule B, nor do Debtors claim any exemption in the PI Case on Schedule C. The PI Case is disclosed in the Statement of Financial Affairs.

The Trustee conducted the first meeting of creditors pursuant to 11 U.S.C. § 341 on April 28, 1993. Present were the Debtors, their attorney, Granville Carter, Esq. ("Carter") of Laurel Legal Services, James Arner, Esq. ("Arner"), attorney for creditor, Thomas Foreman, and the Trustee. The PI Case was discussed. All in attendance were advised by the Trustee that the PI Case was an asset of the bankruptcy estate; that the bankruptcy case would remain open pending resolution of the PI Case; and that it was necessary that the Trustee be notified of and approve of any proposed settlement of the PI Case prior to its final resolution.

Following the § 341 meeting, Carter notified Debtors of the need to inform his office of the progress and any resolution of the PI Case. By letter dated April 30, 1993, Arner notified Cherry that the bankruptcy case was pending, and that it would remain open until the PI Case was resolved. Arner further advised Cherry of the Trustee's position "that the bankrupt-

cy estate may have a claim against the settlement proceeds and [the Trustee] must approve of any settlement in advance." Arner also provided Cherry with the Trustee's name, address and telephone number. Debtors had advised Cherry that they were filing a bankruptcy Petition prior to the Filing Date.

On May 6, 1993, the Trustee filed a Report of No Distribution in error. Once the Clerk's office received the Report of No Distribution, it proceeded to issue, on June 7, 1993, the Discharge of Debtors which was mailed to Debtors, Carter and all creditors. On the same date, the Clerk's office issued a Final Decree closing the case which was mailed to the Trustee and Carter.

The Trustee and Carter realized immediately that the Final Decree was inappropriate. When Carter received the Final Decree, he told the Debtors that a mistake had been made and the case would be reopened. On June 21, 1993, the Trustee filed a Motion to Withdraw No–Asset Report. An Order was entered and served on the Trustee and Carter on July 16, 1993 which provides that the "case is reopened for the purpose of administration in view of after-discovered assets." Following the reopening, Carter both spoke with the Debtors and mailed them notification of the reopening and advised them that the case would remain open for an indefinite period of time, until the PI Case was settled.[2]

On April 15, 1994, Debtors filed an Amended Schedule C, Property Claimed as Exempt, to include an exemption claim for the PI Case. The property is described

---

**2.** An issue was raised concerning whether the mailing address of RD # 1, Box 126, Corsica, Pennsylvania, which Carter used, was the correct address. Mr. Clark testified that any mail sent to Corsica, Pennsylvania, addressed

to "Clark" would be received; and Carter stated that none of the mailings were returned. We find that the Debtors received the mailings.

as "Personal Injury Lawsuit, Alberta Clark vs. VFW (Clarion)." Debtors list the current market value, without deducting the exemption claim, as $7,500. The Debtors specify 11 U.S.C. § 522(d)(11)(D) as the law relied upon for the exemption claim and claim an exemption in the amount of $7,500. The Amended Schedule C was served on the Trustee and all creditors on April 15, 1994.

On May 4, 1994, the Trustee filed a Notice of Asset Case and on May 5, 1994, the Clerk's office mailed a Notice of Need to File Proof of Claim Due to Recovery of Assets to all creditors. There are three claims filed in this case, a claim of Thomas Foreman for $2,332 plus 6% interest from October 1, 1992; a claim of Doctors of Clarion, Inc. in the amount of $640.35; and a claim of S. Chapa, M.D. in the amount of $340.40. Thus, total claims including interest are approximately $5,000.

No further activity occurred in the bankruptcy case until October, 2000, when the Trustee learned that the PI Case had been settled without his knowledge and the Trustee filed a Motion for Appointment of Attorney Pro Se which was granted on October 13, 2000.

While the bankruptcy was pending, the Debtors kept in contact with Cherry who continued to prosecute the PI Case. Cherry never sought nor obtained Bankruptcy Court approval to represent either the Debtors or the estate in the PI Case.[3] The Debtors provided Cherry with a copy of the Discharge of Debtors and Cherry advised Debtors that, having received a discharge, they need do nothing further in the bankruptcy case. Cherry saw the discharge order and wrongly assumed that the discharge order meant that the Trustee had abandoned any interest in the PI Case. Because of the incorrect assumption by Cherry, both Cherry and the Debtors determined that it was appropriate to settle the PI Case without notice to the Trustee and that there was no impediment to the disbursement of the proceeds of the PI claim.

On August 31, 2000, the Trustee contacted bankruptcy counsel for the Debtors at Laurel Legal Services in Clarion, Pennsylvania, to inquire about the PI Case. Carter was no longer in the Clarion office, and the case had been assigned to Attorney Fewell ("Fewell"). Fewell inquired of Cherry and learned of the settlement and the disbursement of the proceeds and so advised the Trustee.

The Complaint and Motion No. HRP–1(2000) followed in which the Trustee demands that Cherry return the $8,116.31 received from the proceeds of settlement, and that the Debtors' claim of exemption in the PI Case be disallowed and that Debtors be compelled to turn over to the Trustee all of the PI Case proceeds which they received. On the day of the scheduled trial on the Complaint, Debtors filed a further Amended Schedule C to change their claim of exemption. In this Amendment, Debtors state that the current market value of the proceeds of the PI Case is $21,000 and claim exemptions of $21,000 as loss of future earnings under § 522(d)(11)(E); $7,500 for Alberta Clark and $7,500 for Larry Clark under § 522(d)(11)(D); and $3,750 for Alberta Clark and $3,750 for Larry Clark under

---

**3.** In testimony at trial on April 27, 2001, Cherry indicated that she had never sought appointment as attorney, but that she wanted leave to do so now. Another 9 months have passed and Cherry still has made no effort to seek appointment. Mere oversight or inadvertence does not constitute an extraordinary circumstance which might warrant a nunc pro tunc appointment. *In re Ponce Marine Farm, Inc.*, 259 B.R. 484, 493 (D.Puerto Rico 2001) *citing In re Jarvis*, 53 F.3d 416, 421 (1st Cir.1995).

§ 522(d)(5). The Debtors/Cherry posit that under the Amended Claim of exemption, all of the proceeds of the PI Case are exempt and not subject to recovery by the Trustee for the benefit of creditors.

The Amendment was followed by Motion No. HRP–1(2001), Trustee's Motion in the Form of Objections to Debtors' Amended Claim of Exemption.

### Discussion

### I. Personal Injury Claim is Property of Estate

■ The Bankruptcy Code provides that the commencement of a voluntary bankruptcy case creates an estate comprised of legal and equitable interests of the debtor in property, wherever located and by whomever held. 11 U.S.C. § 541.

■ "When a debtor files a bankruptcy petition, all of his property becomes property of a bankruptcy estate." *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S.Ct. 1644, 1647, 118 L.Ed.2d 280 (1992). Section 522 of the Bankruptcy Code allows a debtor to prevent the distribution of property which would otherwise be subject to his creditors' claims by claiming it as exempt. *Id.*

Personal injury claims pending at the time of the filing of a bankruptcy case are property of the estate. *Kollar v. Miller (In re Kollar)*, 176 F.3d 175, 178 (3d Cir. 1999); *In re Rice*, 224 B.R. 464, 467 (Bankr.D.Or.1998). At the time of filing, the Debtors made no claim of exemption in the PI Case. The PI Case became an asset of the estate under the custody and control of the Trustee.

### II. Failure to Seek Appointment to Serve as Counsel

■ Cherry was notified of the bankruptcy and of the Trustee's interest in the PI Case. Cherry never made any effort to contact the Trustee or to seek appointment as counsel to pursue the PI Case.

"[T]he Third Circuit Court of Appeals has taken a no-nonsense prophylactic approach in denying attempts by professionals to be compensated without specific prior authority of the bankruptcy court." *In re Stroudsburg Dyeing and Finishing Co.*, 209 B.R. 648, 649 (Bankr.M.D.Pa.1997) citing *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 103 (3d Cir.1988) and *In re Arkansas Co., Inc.*, 798 F.2d 645 (3d Cir. 1986). *See also In re Cooper*, 263 B.R. 835, 837–38 (Bankr.S.D.Ohio 2001). Without appointment by the Court, Cherry is not entitled to compensation for services rendered.

### III. April 15, 1994 Amendment to Schedule C Does Not Remove Entire Personal Injury Claim from Estate

■ Cherry asserts that Debtors' April 15,1994 Amendment to the claim of exemption on Schedule C served to remove the *entire* PI Case as an asset of the estate. Cherry asserts that when Debtors listed the value of the PI Case as $7,500 and claimed an exemption of $7,500, they exempted the entire PI Case and that since the Trustee failed to object to the claimed exemption within the time period prescribed by Fed.R.Bankr.P. 4003(b), the entire proceeds of the PI Case are exempt. Fed.R.Bankr.P. 4003(b) requires the trustee (or any creditor) to file objections to an amended claim of exemption within 30 days of the filing of the Amendment. The Debtors filed their Amended Schedule C on April 15, 1994 in which they listed the value of the PI Case as $7,500 and claimed an exemption in the amount of $7,500 under 11 U.S.C. § 522(d)(11)(D). No objection to the April 15, 1994 Amendment was filed. Debtors/Cherry direct our attention to *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992)

and *Allen v. Green (In re Green)*, 31 F.3d 1098 (11th Cir.1994) in support of their position that by valuing the PI Case at the same amount as they valued the exemption, the Debtors exempted the entire value of the PI Case. In *Taylor*, the Supreme Court held that a trustee is required to object within 30 days, under § 522(*l*) and Rule 4003(b), after a debtor claims an exemption of property from the bankruptcy estate for which the debtor is not legally entitled, and that the trustee forfeits his right to later contest the exemption by failing to object. *Taylor* at 643–44, 112 S.Ct. at 1648. In *Taylor*, the debtor listed the value of her exemption as "unknown" and claimed the entire asset exempt. Here, Debtors claimed only $7,500 of the PI Case as exempt, not the entire asset.

Debtors/Cherry also rely on *Green*. There, the debtor claimed exempt her interest in a lawsuit from an auto accident. The debtor listed the value claimed exempt as $1.00. The trustee later arranged a $15,000 settlement and the debtor moved to receive all of the proceeds of settlement. The court held that because the debtor exempted the full reported value of the lawsuit, the debtor was entitled to all of the proceeds. The *Green* court put little, if any, significance on the debtor's reported value of the lawsuit as $1.00 because, unlike the situation in the present case, the trustee in *Green* conceded that he understood the $1.00 value listed represented a contingent value. *Green* at 1100.

In *In re DeSoto*, 181 B.R. 704 (Bankr. D.Conn.1995), the court addressed facts similar to those in *Green*, reaching a contrary conclusion. In *DeSoto*, debtors claimed exempt their interest in stock, which they valued at $1.00. The trustee later arranged to sell the stock for $10,000. The debtors, relying on *Taylor*, asserted that because they exempted the entire value of the stock, i.e. $1.00, the title to the

stock revested in them and any later increase in value belonged to them. The court noted that *Taylor*, where the debtor listed the value of the exemption as "unknown," the trustee was fairly and reasonably on notice that his failure to object could deprive the estate of the property's value in an unlimited amount. However, in *DeSoto*, the debtors valued their claim of exemption. Therefore, the trustee had a reasonable expectation that the exemption claim could not deprive the estate of more than the amount claimed as exempt. *DeSoto*, 181 B.R. at 707.

We agree with the reasoning and result in *DeSoto*. Debtors claimed a $7,500 exemption. The Trustee had no reason to object and no cause to believe that the claim of exemption would deprive the estate of any more than the $7,500 claimed. *See Mercer v. Monzack*, 53 F.3d 1 (1st Cir.1995); *Ainslie v. Grablowsky (In re Grablowsky)*, 32 F.3d 562 (4th Cir.1994) (unpublished opinion, text in Westlaw); *Addison v. Reavis*, 158 B.R. 53 (E.D.Va. 1993); *In re Soost*, 262 B.R. 68 (8th Cir. BAP 2001); *In re Shelby*, 232 B.R. 746 (Bankr.W.D.Mo.1999); *In re Bregni*, 215 B.R. 850 (Bankr.E.D.Mich.1997).

Claiming an exemption of a specific dollar value does not render the PI Case immune from process by the Trustee as an asset of the estate even though the Trustee has not objected to the claimed exemption. In re *Soost*, 262 B.R. at 72. Since the value of the PI Case exceeds the amount claimed as exempt, the Trustee had an obligation to pursue it for the benefit of creditors. *Id.*

### IV. Trustee Did Not Abandon Personal Injury Claim

██ Debtors/Cherry assert that the Trustee's failure to join in the PI Case constituted an abandonment of the action

entitling Debtors to the entire amount of the settlement from the PI Case.

At the commencement of the case, the Trustee advised Debtors and their counsel that the PI Case was an asset of the estate and that it could not be settled without the Trustee's approval. Cherry was notified of the Trustee's interest.

The Trustee had no obligation to take any further action. Personal injury claims can take years to proceed through state court. The Trustee, having put all parties on notice of the estate's interest, need only wait to see if a recovery develops which exceeds any amounts claimed as exempt.

■ The Trustee can abandon property only after notice to all creditors. 11 U.S.C. § 554(a), Fed.R.Bankr.P. 6007(a). A party in interest, such as the Debtors, may also seek abandonment of property of the estate, but such abandonment may be granted only after notice to all creditors and an opportunity for hearing. 11 U.S.C. § 554(b); Fed.R.Bankr.P. 6007(b).

The Trustee never sought to abandon the estate's interest in the PI Case nor did the Debtors nor any other party in interest seek to have the PI Case abandoned by the Trustee. The proceeds of the PI Case cannot be deemed abandoned by the Trustee.

### V. Trustee's Action is not Time–Barred or Barred by Laches

■ In essence, the Trustee made a demand for turnover of the proceeds of the PI Case at the time of the § 341 meeting. The Trustee advised Debtors and their counsel that the PI Case was an asset of the estate and that it could not be concluded without the Trustee's approval. Cherry was advised of the Trustee's position by the letter from Arner. 11 U.S.C. § 542 provides that "an entity...in possession, custody or control, during the case, of

property that the trustee may use...or that the debtor may exempt...shall deliver to the trustee, and account for, such property or the value of such property." 11 U.S.C. § 542(a).

■ The Bankruptcy Code does not contain a statute of limitations for turnover actions pursuant to § 542. *In re Midway Airlines, Inc.*, 221 B.R. 411, 458 (Bankr. N.D.Ill.1998). There are no equitable defenses to a Trustee's demand for turnover of estate property other than the defenses enumerated in the statute, none of which are applicable here. *Id.* at 459; *In re USA Diversified Products, Inc.*, 100 F.3d 53 (7th Cir.1996); *In re Roti*, 271 B.R. 281, 292 (Bankr.N.D.Ill.2002).

The Trustee acted promptly upon learning that Debtors/Cherry had settled the PI Claim which was property of the estate, without the Court's or the Trustee's knowledge or approval. It cannot be said that the turnover action is barred by the doctrine of laches. It was not the responsibility of the Trustee to check the status of the PI Case at the courthouse, but rather the responsibility of the Debtors/Cherry to advise the Trustee that the PI Case was going to be settled. *See* 11 U.S.C. § 521. The Debtors/Cherry cannot complain of the timeliness of the Trustee's Complaint when the delay was based on the Debtor's/Cherry's breach of their duty to provide notice to the Trustee that the PI Case was ready for settlement.

### VI. Debtors' Exemption Claims

■ Debtors' initial schedules made no claim of exemption for any interest in the proceeds of the PI Case. On April 15, 1994, as previously discussed, Debtors filed an Amended Schedule C to claim an exemption in the proceeds of the PI Case to the extent of $7,500. There were no timely objections to the $7,500 claim of exemption. The Trustee filed (at Motion No.

HRP–1(2000)) a Motion for Turnover of Property and Forfeiture of Debtors' Exemption shortly after learning that the PI Case had been settled and that Debtors received proceeds, net of attorney fees, in an amount in excess of $12,000. The Trustee asserts that the Debtors knew, or should have known, that Bankruptcy Court approval of the settlement was required and that any amount in excess of the claimed exemption was payable to the Trustee for the benefit of the estate and that by accepting proceeds in excess of the claimed exemption, the Debtors defrauded the estate. The Trustee concludes that as a result of such conduct, the Debtors have forfeited the right to any exemption and requests that Debtors be ordered to return the entire amount of the settlement proceeds to the Trustee for the benefit of the estate.

On the date of the trial scheduled on Adversary No. 00–1095, April 27, 2001, Debtors filed a further Amended Schedule C (previously discussed) which, if allowed, asserts claims of exemption, sufficient to remove all of the proceeds of settlement of the PI Case from the estate.

The Trustee timely filed a Motion in the Form of Objections to Debtors' Amended Claim of Exemption at Motion No. HRP–1(2001). The Trustee posits that the Debtors are not entitled to the claimed exemptions in the proceeds of the PI Case because:

A. The exemption requested involves an exemption in concealed assets;

B. The Debtors are asserting an exemption claim in property that is the subject of a turnover action now being prosecuted by the Trustee;

C. Debtors have failed to comply with the Bankruptcy Rules;

D. Debtors cannot now amend their exemption claims for the reason that the Trustee and the Debtors' estate relied upon the exemptions previously filed by the Debtors, to the estate's prejudice, which prejudice includes, but is not limited to, the initiation of a turnover action and the taking of other action at great expense to the Trustee and the Debtors' estate;

E. The Debtors' attempt to amend their claim for exemptions is untimely; and

F. The Debtors' claims for exemption are not authorized by law.

The Debtors respond that the PI Case was at all times disclosed to the Trustee; that Debtors claim no more than the exemptions to which they are entitled; that Debtors have complied with the Bankruptcy Rules and that Fed.R.Bankr.P. 1009 permits Debtors to amend their claim of exemption at any time prior to the case being closed; and that the Trustee knew or should have known that Debtors had not claimed all of the exemptions to which they are entitled and thus, did not have the right to rely on Schedule C as filed in April, 1994.

A hearing on the exemptions claimed by the Debtors pursuant to the further Amended Schedule C and the Trustee's objections thereto was held on June 18, 2001. The Court inquired whether there were any facts that were not already on the record (from the April 27, 2001 trial) that were needed in order to decide the exemption issue. The Trustee indicated that certain facts need be placed on the record. The Court agreed to hear the Trustee's statement of facts and, if counsel for Debtors raised any objection, the Court would fix an evidentiary hearing.

The facts recited by the Trustee detail his efforts to obtain information about the PI Case settlement and payment of Cherry's attorney's fees prior to initiating the within litigation. The Trustee spoke with

Cherry on July 17, 2000 and voiced his concerns. Cherry promised to retrieve the documentation from storage to provide the information requested by the Trustee. Over two months passed. Between July 17 and September 29, 2000, the Trustee made numerous unsuccessful attempts to reach Cherry by telephone. When nothing was forthcoming, the Trustee had to commence and pursue litigation to obtain the information and seek turnover of the proceeds. The litigation took time and effort by the Trustee, yet nothing was mentioned about a further Amended Schedule C until the day of trial on the Adversary Complaint, at which time Debtors' counsel advised that she had, just that morning, filed a further Amended Schedule C to claim *all* of the proceeds of the PI Case as exempt (and that since all of the proceeds were exempt, and not property of the estate, there was no reason for Cherry to have to return the portion of the PI Case settlement which she kept for herself for fees and expenses).

 The Federal Rules of Bankruptcy Procedure provide that debtors may amend their schedules "as a matter of course" at any time before the case is closed. Fed.R.Bankr.P. 1009(a). The Rule is liberal, but "[t]he bankruptcy court has the discretion to disallow the amendment of exemptions if the amendment has been made in bad faith or prejudices third parties." *In re Kaelin,* 271 B.R. 316, 320 (8th Cir. BAP 2002). *See also In re Calder,* 973 F.2d 862 (10th Cir.1992); *In re Daniels,* 270 B.R. 417 (Bankr.E.D.Mich. 2001); *In re Cudeyro,* 213 B.R. 910, 917 (Bankr.E.D.Pa.1997); *In re Lockovich,* 150 B.R. 989 (Bankr.W.D.Pa.1993). "[A] debtor's amendments to exemptions are not to be automatically allowed, but may be reviewed with [an] equitable gloss." *In re Cudeyro,* 213 B.R. at 918.

 Simple delay does not constitute prejudice. *In re Daniels,* 270 B.R. 417, 426 (Bankr.E.D.Mich.2001) *quoting In re Talmo,* 185 B.R. 637, 645 (Bankr.S.D.Fla. 1995).

[P]rejudice may be established by showing harm to the litigating posture of parties in interest. If the parties would have taken different actions or asserted different positions had the exemption been claimed earlier, and the interests of those parties are detrimentally affected by the timing of the amendment, then the prejudice is sufficient to deny amendment. Moreover, an amendment is prejudicial if it impairs a trustee in the diligent administration of the estate. *Id.*

 Prejudice arises when a trustee has acted in reliance upon debtor's initial schedules and having taken action based on those schedules, is prejudiced if amendments are allowed. *In re Cudeyro* at 919.

Here, Debtors claimed an exemption of $7,500 in the proceeds of the PI Case. The Trustee learned that the PI Case was settled for $21,000 without his knowledge or court approval. It therefore appeared to the Trustee that a significant amount of the proceeds were not claimed as exempt and were available for the estate in an amount sufficient to allow for full payment to all creditors. When Debtors' counsel failed to provide the Trustee information concerning the PI Case, the Trustee was prompted by the potential recovery of a non-exempt asset for the benefit of the estate to initiate and pursue litigation.

It is fair to assume that had the Trustee determined that the Debtors were able to exempt all of the proceeds from the PI Case, no time or money would have been expended in pursuing the litigation.

The Debtors' first Amended Claim of Exemption filed on April 15, 1994 caused

the Trustee to take different actions and assert different positions than would have been asserted had Debtors initially claimed the exemptions that they now attempt to claim.

Prejudice has also been found to accrue where a debtor exhibits "inordinate delay" in amending his exemption schedules. *In re Jelinek,* 97 B.R. at 432 (discussing *In re Patel,* 43 B.R. 500 (N.D.Ill.1984)).

As stated by one court, prejudice may be found to attend such delay:

To allow a debtor to amend his claim of exemption at this late date would clearly be inequitable and would hinder the diligent administration of the bankruptcy estate by the bankruptcy trustee. Because to allow the Debtor to amend his claim of exemption at this late date would have an adverse impact on creditors whose rights have attached to the assets of the bankruptcy estate and because late amendment to the Debtor's claim of exemptions would hinder the diligent administration of the bankruptcy estate by the Trustee, the amendment is not seasonable (sic) and, therefore, not allowed. *In re Snow,* 21 B.R. 598, 600 (Bankr.E.D.Ca.1982).

*In re Cudeyro* at 920.

The Trustee detrimentally relied on Debtors' $7,500 exemption claim in pursuing recovery of the proceeds of the PI Case and therefore has established the requisite prejudice to justify disallowance of the amendment. The appreciable delay by Debtors in amending their exemption schedules is additional justification for disallowing the further amended claim of exemptions.

██ A finding of bad faith can also be made here which is determined by examining the totality of the circumstances. *In re Kaelin,* 271 B.R. 316, 321 (8th Cir. BAP 2002).

Debtors filed this case on January 19, 1993. The schedules did not disclose the PI Case as an asset on Schedule B nor did Debtors claim an exemption in the proceeds of the PI Case on Schedule C. Disclosure of the PI Case was limited to mention in the Statement of Financial Affairs. The PI Case was discussed at the § 341 meeting. Debtors clearly were informed that the PI Case was an asset of the estate and subject to control by the Trustee. Debtors' bankruptcy attorney reiterated this information to them after the § 341 meeting.

On April 15, 1994, Debtors filed the first Amended Schedule C to claim $7,500 from the proceeds of the PI Case as exempt. Carter continually attempted to reach Debtors to learn the status of the PI Case. Debtors ignored Carter's requests. Debtors never provided change of address information to anyone in the case.

When the PI Case was settled, the Debtors knew that they were advised by Carter and the Trustee that the proceeds were an asset of the estate. While the Debtors had received a discharge, the discharge does not mean that assets of the estate have been abandoned. Cherry may have erroneously advised Debtors that having received a discharge, the bankruptcy was over. However, Debtors knew what they had been told at the § 341 meeting and before taking the proceeds of the PI Case for their own benefit, it was incumbent upon them to check with their bankruptcy attorney or the Trustee, and the failure to do so suggests an attempt to manipulate the process.

With no capability of contacting the Debtors, Cherry was contacted. Cherry failed to provide the necessary information and the Trustee was forced to commence litigation. The Trustee hired a private

investigator to locate Debtors, who appeared at the last minute and asserted a further amended claim of exemption to exempt *all* of the proceeds of the PI Case from the estate.[4]

The totality of circumstances requires a finding of bad faith, which is yet another reason to disallow the Debtors' further Amendment to Schedule C.

## VII. Conclusion

### 1. Adversary No. 00-1095

Cherry was not appointed by the Court to prosecute the PI Case. Absent appointment, Cherry is not entitled to compensation. The funds she received from the proceeds of settlement of the PI Case on May 22, 1994 in the amount of $8,116.31 are property of the estate and Cherry will be directed to turn over that amount, together with interest, to the Trustee.

### 2. Motion Nos. HRP-1(2000) and HRP-1(2001)

The Debtors may fare better than Cherry. Debtors are not entitled to any exemption in the proceeds of settlement in excess of $7,500.[5] However, from the funds that Cherry is required to return to the estate, all creditors who have filed claims can be paid in full and it is likely that the fund will be sufficient to also pay the costs of administration of the bankruptcy case. If all creditors and the costs of administration are paid, there is no need to require the Debtors to turn over any of the proceeds that they received and no need to address the issue of whether the

Debtors' exemption claims must be denied in their entirety. We will defer a final ruling on these Motions.

Appropriate Orders will be entered.

---

4. Some of the delay which occurred after the Trustee learned of the PI Case settlement can be attributed to Cherry. Debtors could not be located until shortly prior to the April 27, 2001 hearing. However, Debtors themselves have a duty to cooperate with the Trustee. Under 11 U.S.C. § 521(3) and their failure to keep the Trustee informed of the progress of

the PI Case or their whereabouts by providing a change of address is sufficient to allow the badge of bad faith to attach to them.

5. It may be that Debtors have, by their actions, forfeited the right to even $7,500; a decision we do not make at this time.