**In re John Gordon KNAPP, Debtor**

**No. 99–10091.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 17, 2002.

Richard W. Roeder, Esq., Titusville, PA, Trustee and Attorney Pro se.

Mark T. Knapp, Esq., Gibsonia, PA, for Debtor.

Brian M. Spaid, Esq., Franklin, PA, for Teresa L. Knapp.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Factual Background

John Gordon Knapp ("Debtor") filed a voluntary Petition under Chapter 7 of the Bankruptcy Code on January 25, 1999. Richard W. Roeder, Esq. was appointed Chapter 7 Trustee ("Trustee"). Identified on the Debtor's Statement of Financial Affairs is a lawsuit (the "Lawsuit") that the Debtor had initiated prepetition against Victims Resource Center, Inc. ("VRC") et al. Debtor did not list the Lawsuit as an asset on Schedule B or claim an exemption in the Lawsuit on Schedule C.

The Lawsuit was discussed at the First Meeting of Creditors on March 31, 1999. Shortly thereafter, on April 26, 1999, the Trustee filed a Motion to Approve a Settlement of the Lawsuit for $6,000. Debtor opposed settlement of the Lawsuit. Debtor alleged that the value of the Lawsuit exceeded $6,000. Debtor sought to convert the case to a proceeding under Chapter 13 and continue to prosecute the Lawsuit on his own behalf. A hearing to consider approval of the Settlement and the conversion to Chapter 13 was held on May 14, 1999. The Court inquired as to whether the settlement proceeds were exempt. The Trustee stated that the proceeds would be exempt if the Debtor changed his exemption. By Memorandum and Order dated July 30, 1999, the Trustee's Motion to Approve Settlement was refused and the case was converted to Chapter 13. We stated "that Debtor has yet to claim any of the proceeds of the Lawsuit as exempt, but anticipate that the Debtor will promptly amend his exemption schedule."

While the case was proceeding under Chapter 13, Teresa L. Knapp ("Mrs. Knapp") sought and was granted relief from the automatic stay "to proceed with the divorce case currently pending before the Court of Common Pleas of Venango County, Pennsylvania, involving the Debtor, including claims of Teresa Lynn Knapp for alimony and support and property division." Mrs. Knapp averred that other creditors of the Debtor would not be prejudiced by having the Court of Common Pleas resolve the remaining issues in the divorce case. The Order granting relief from stay provided for notice to the Chapter 13 Trustee of any substantive order issued in the divorce proceeding and an opportunity to review the removal of assets from the bankruptcy estate and to take intervening action.

Debtor ceased making Chapter 13 plan payments as of December, 2000 and the case was eventually reconverted to Chapter 7 by Order dated July 31, 2001. The Trustee was reappointed. The conversion order fixes deadlines for the filing of schedules. Debtor filed a Response to the conversion Order. Debtor states that he "anticipates the need to amend said schedules, including exemptions, to reflect some changes due to financial changes, a settlement of a lawsuit asset, as well as an expected court order of equitable distribution in divorce proceedings in Venango County." In a footnote Debtor states: "Please note this court's prior order granted Debtor until August 27, 2001 to amend his schedules given the now 7 month delay...in deciding divorce matters.... In

addition, debtor is unable to amend his schedules since he does not know the outcome of [the divorce] proceedings."

While the case was in Chapter 13, Debtor had negotiated but never consummated a settlement of the Lawsuit for $12,000. After his reappointment, the Trustee again filed a Motion to Approve Settlement which was approved by the Court on November 20, 2001. The proceeds of the Settlement, $12,000, were paid to the Trustee.

Following the resolution of certain objections to claims of creditors, the Trustee's Final Account, Application for Compensation and Proposed Distribution ("Final Reports") were transmitted to the United States Trustee for review, and then filed with the Court on July 26, 2002. The estate consists of the $12,000 proceeds of settlement, $1,337.37 which the Trustee received from the Chapter 13 Trustee, and some minor interest payments, less previously authorized disbursements of $1,614.99. The amount available for distribution is $11,787.24. The Trustee proposes to pay administrative claims and to pay a dividend of approximately 38% to unsecured creditors.

A hearing to consider the Final Reports was fixed for September 9, 2002 at 2:30 p.m. Notice of the hearing was mailed to all creditors and interested parties on August 2, 2002. On August 29, 2002, Debtor filed Amended Schedules A, B and C and an objection to the Trustee's proposed distribution. Attached to Debtor's Amended Schedules is a copy of a Marital Settlement Agreement ("Agreement") between the Debtor and Mrs. Knapp dated July 20, 2002 and an Order of the Court of Common Pleas of Venango County dated August 15, 2002 incorporating the Marital Settlement Agreement into the Divorce Decree.

The Agreement specifically provides that it "must be approved...by the United States Bankruptcy Court...without any changes." At the hearing on September 9, counsel for Debtor and counsel for Mrs. Knapp orally moved for approval of the Agreement.

Under the Agreement, Debtor gives Mrs. Knapp certain items listed as his property on the original bankruptcy schedules, i.e., all equity in the marital residence, a 1991 Oldsmobile valued by the Debtor on his schedules at $4,000 (one-half interest equals $2,000), furniture that wife holds valued on schedules at $4,000, and other items not listed on Debtor's schedules: wife's share of Northwest Savings' account, Northwest checking account, and 1989 Dodge or proceeds from its sale.

In exchange, Debtor is relieved of delinquent child support arrears and receives certain other items: net proceeds of sale of 4420 Wood Street; husband's share of Northwest Savings' account; Navy Federal Credit Union share and share draft accounts; all rights in military pension and retirement benefits; 2 American flags with 42 stars each; green military box; old green vice; grandmother's chair; 2 baseball gloves; 35mm Olympus OM10 camera; World's Greatest Flyer Print; Space Invaders and Pac Man; Round Metal cooler from Hawaii; power saw; CB radio; fine silverware for dinner parties; and hurricane box.[1]

Debtor proposes to amend his schedules by deleting his interest in the residence allocated to Mrs. Knapp from Schedule A; adding the $12,000 in settlement proceeds

---

1. Debtor does not claim these items as exempt in Amended Schedules filed August 29, 2002.

of the Lawsuit to Schedule B. Debtor also alleges that other personalty previously listed on Schedule B and claimed as exempt on Schedule C should be deleted from those schedules: Navy Federal Credit Union account funds, Mellon checking account, lease security deposit, prints and books, firearms, stock, cash.[2] Debtor also eliminates his claim of exemption in the residence on Schedule C and now claims $9,650 from the proceeds of the Lawsuit as exempt under § 522(d)(5).[3]

Debtor objects to the Trustee's proposed final distribution because it fails to provide for payment of the Debtor's (d)(5) exemption as claimed in the Amended Schedule C filed on August 29, 2002. The Trustee asserts that the proposed distribution recognized all exemptions on record when the Final Reports were filed; that Debtor's attempt to amend exemptions after protracted delays should be refused; that despite the Court's previous reminders to amend his exemption regarding the proceeds of the Lawsuit, Debtor failed to claim any of the proceeds as exempt; that in the Agreement, Debtor has negotiated away his share of $22,000 equity in the residence to eliminate nondischargeable support arrearages to the detriment of the estate; and that approval of the Agreement should be conditioned upon Debtor's exemption of the marital real estate as originally claimed.

### Discussion

#### A. Law

 A debtor generally has the right to amend schedules as a matter of course at any time before the case is closed. Fed. R.Bankr.P. 1009(a). "[A] debtor's prof-

fered amendments to exemptions are not to be automatically allowed, but may be reviewed with [an] equitable gloss." *In re Cudeyro*, 213 B.R. 910, 918 (Bankr.E.D.Pa. 1997). "Conversely, a debtor has the right to amend schedules unless prejudice or bad faith is demonstrated." *Id.*

> The bankruptcy court has the discretion to disallow the amendment of exemptions if the amendment has been made in bad faith or prejudices third parties. *See Martinson v. Michael (In re Michael)*, 163 F.3d 526, 529 (9th Cir.1998). *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir.1982); *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253, 256 (9th Cir. BAP 1988); *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984).

*In re Kaelin*, 271 B.R. 316, 320 (8th Cir. BAP 2002); *See also In re Clark*, 274 B.R. 127, 136 (Bankr.W.D.Pa.2002).

> "[P]rejudice to the trustee or creditors may prevent the debtor in bankruptcy from amending the petition or schedules." *In re Scott*, 2002 WL 1284281 (Bankr. M.D.N.C., June 3, 2000) *citing Tignor v. Parkinson*, 729 F.2d 977, 979 (4th Cir. 1984); *In re Doan*, 672 F.2d 831, 833 (11th Cir.1982).

In discussing the issue of whether prejudice would result by the allowance of an amendment to Schedule C, the court in *Cudeyro* at 919–20 states:

> One element in this analysis appears to be the existence *vel non* of reliance made upon the debtor's exemption selection prior to the proffered amendment. Prejudice may arise, for example, where a trustee has engaged in efforts to sell certain property, which efforts he or she

---

**2.** Debtor alleges deletion of these items is consistent with the provisions of the Agreement. We do not find disposition of these items in the Agreement.

**3.** Although this case was filed on January 25, 1999, Debtor claims (d)(5) exemptions in increased amounts which became effective April 1, 2001.

might have foregone had the debtor initially claimed such property as exempt. That is, in those instances the trustee may be understood to have acted in reliance upon the debtor's initial schedules, and having taken such actions may be prejudiced if the amendments were allowed. *See, e.g., Matter of Eldridge,* 15 B.R. 594, 595 (Bankr.S.D.N.Y.1981) (debtors attempted to change exemptions after trustee had contracted to sell the subject property); *In re Santoro,* 3 B.R. [210] at 212 [(Bankr.E.D.N.Y.)] (debtors attempted to claim exemptions after the trustee had sold subject property); *see also Hardage v. Herring Nat. Bank,* 837 F.2d [1319] at 1324 [(5th Cir. 1988)] (prejudice may occur if creditors have detrimentally relied upon the debtor's original exemption claim).

Similarly, "several cases have established that, if a distribution of assets has already been made on the basis of exemptions previously claimed, then it is unfairly prejudicial to creditors, and too late to change exemptions." *In re Shaffer,* 92 B.R. [632] at 634 [(Bankr.E.D.Pa. 1988)]; *see, e.g., In re Santoro.* In a related fashion, it has also been noted that debtors in bankruptcy "should not be allowed to amend their exemptions after they have sought relief relating to the originally claimed exemption." *In re Gonzalez,* 149 B.R. [9] at 11 [(Bankr. D.Mass.1993)] (debtors not entitled to amend after unsuccessfully seeking relief on originally claimed exemption).

Prejudice has also been found to accrue where a debtor exhibits "inordinate delay" in amending his exemption schedules. *In re Jelinek,* 97 B.R. [429] at 432 [(Bankr.N.D.Ill.1989)] (discussing *In re Patel,* 43 B.R. 500 (N.D.Ill.1984)). As stated by one court, prejudice may be found to attend such delay:

> To allow a debtor to amend his claim of exemption at this late date would clearly be inequitable and would hinder the diligent administration of the bankruptcy estate by the bankruptcy trustee. Because to allow the Debtor to amend his claim of exemption at this late date would have an adverse impact on creditors whose rights have attached to the assets of the bankruptcy estate and because late amendment to the Debtor's claim of exemptions would hinder the diligent administration of the bankruptcy estate by the Trustee, the amendment is not seasonable and, therefore, not allowed.

*In re Snow,* 21 B.R. 598, 600 (Bankr. E.D.Cal.1982). Phrased somewhat differently, "[a]t some point, the debtor's election of either the state or federal exemptions must become irrevocable so as to avoid any unfair prejudice to the trustee and unsecured creditors." *In re Brewer,* 17 B.R. 186, 188 (Bankr. M.D.Tenn.) *aff'd.* 22 B.R. 983 (M.D.Tenn.1982); *see In re Duggan,* 4 B.R. 709, 711 (Bankr.N.D.Tex.1980) ("[a]t some point the right to switch from one system to another must end and there be some finality to a choice);" *In re Korff,* 14 B.R. 189, 193 (Bankr. E.D.Mich.1981); *see also In re Reed,* 1995 WL 227389 (9th Cir.1995) (debtor might have been entitled to amend exemptions, but lost that entitlement by "plung[ing] the bankruptcy estate into lengthy litigation," and by not requesting his amendment in a seasonable manner).

I also note that a treatise discussing the former Bankruptcy Act and its concomitant rules analyzed issues surrounding the claiming and awarding of exemptions. *See generally* L. King, 1A *Collier on Bankruptcy,* ¶¶ 6.18, 6.19 (14th ed.1978). As explained in that analysis, the debtor in bankruptcy may rectify an

initial failure to claim an exemption "by seasonable amendment," thus stating by negative implication that an "unseasonable" amendment may not be allowed.

Another bankruptcy court recently addressed the issue of prejudice to the trustee by an amended claim of exemptions:

An additional reason for not allowing the amendment is that under the circumstances of this case, the amendment of Debtor's claim for property would result in prejudice to the Trustee and the Bankruptcy estate. As noted earlier, mere delay in filing an amendment to exemptions, standing alone, is not sufficient to show prejudice. However, prejudice may be established by showing harm to the litigating posture of the Trustee. *See In re Daniels,* 270 B.R. 417, 426 (Bankr.E.D.Mich.2001) (quoting *In re Talmo,* 185 B.R. 637, 645 (Bankr. S.D.Fla.1995)). "If the parties would have taken different actions or asserted different positions had the exemption been claimed earlier, and the interests of those parties are detrimentally affected by the timing of the amendment, then the prejudice is sufficient to deny amendment." *Id.* "Moreover, an amendment is prejudicial if it impairs a trustee in the diligent administration of the estate." *Id. See also In re Cudeyro,* 213 B.R. 910 (Bankr.E.D.Pa.1997).

*In re Scott,* 2002 WL 1284281 at *6; *see also In re Clark,* 274 B.R. 127, 136 (Bankr. W.D.Pa.2002).

### B. Analysis

#### I) The Lawsuit

■ The Debtor failed to list the Lawsuit as an asset on the initial Schedule B or claim it as exempt on the initial Schedule C. It was disclosed solely on Debtor's Statement of Financial Affairs. The Lawsuit was discussed at the § 341 meeting conducted by the Trustee on March 31, 1999. Almost immediately thereafter, the Trustee began utilizing legal time and incurring fees and expenses on behalf of the estate in an attempt to liquidate the Lawsuit. The Trustee quickly moved for approval of a settlement of the Lawsuit by motion filed on April 26, 1999. Debtor was unquestionably aware that the Lawsuit was an asset of the estate. Debtor opposed the Trustee's proposed settlement and sought to convert the case to Chapter 13 to enable Debtor to take control of and continue to prosecute the Lawsuit. During this time, Debtor never amended the Schedules in regard to the Lawsuit.

Debtor received yet another reminder in the Court's Memorandum and Order of July 30, 1999 of the need to promptly amend his exemption schedule. Still no amendment.

The case proceeded under Chapter 13 until it was reconverted to Chapter 7 on July 31, 2001. The Debtor had negotiated but never consummated a higher settlement during the Chapter 13 portion of the case. Upon his reappointment, the Trustee again began performing his obligation to liquidate assets of the estate which required him to once again pursue approval of a settlement of the Lawsuit. Debtor still failed to amend the Schedules. Debtor did file a statement in response to the order of conversion to Chapter 7, stating that he was unable to complete the amendment without knowing the outcome of his divorce case. By this time, Debtor knew that the Lawsuit was estate property and also knew the value of the Lawsuit. There is nothing which would have prevented Debtor from making an amendment to Schedule B to list the Lawsuit as property of the estate and to amend Schedule C to indicate a claim of exemption to the extent available.

The Trustee continued to process the estate, filing an objection to claim, preparing his Final Reports, submitting the Final Reports to the United States Trustee for approval, and mailing notice of the Trustee's proposed distribution to all creditors.

Finally, after the Trustee had liquidated the estate and nearly completed all of the tasks necessary to make a final distribution and close the estate, the Debtor objects to the proposed distribution and files amended schedules listing the Lawsuit as property of the estate and claiming $9,650 of the Lawsuit and proceeds as exempt.

The Debtor's lack of an exemption claim in the Lawsuit at any time prior to the present amendments at the conclusion of the case is prejudicial to the Trustee. The Trustee took action to obtain approval of the settlement of the Lawsuit in reliance upon Debtor's schedules. The estate has incurred Chapter 7 administrative costs of $2,866. If Debtor's amended claim of exemption were allowed as filed, the funds remaining in the estate would not even pay the administrative costs, let alone provide a distribution to general creditors. The Trustee would have appropriately closed the case as a no-asset case without the necessity of even opening an estate. The Trustee detrimentally relied on the Debtor's lack of an exemption claim in the Lawsuit and has established the requisite prejudice to justify disallowance of the amendment. The appreciable delay by Debtor in listing the Lawsuit as an asset on Schedule B and claiming it as exempt is additional justification for disallowance of the amendment.

### ii. The Marital Settlement

Debtor and Mrs. Knapp ask for approval of the Marital Settlement Agreement in which Debtor seeks to voluntarily transfer his interest in, *inter alia,* a residence which was initially claimed as exempt in exchange for, *inter alia,* Mrs. Knapp's release of certain support obligations (which Debtor would be unable to discharge in the bankruptcy case) and Mrs. Knapp's release of any claim against Debtor's pension plans (which are not part of the bankruptcy estate) and then to allow the Debtor to amend his exemptions to claim as exempt nearly all of the only asset available for the payment of administrative claims and for a distribution to creditors.

In addition, Debtor proposes to delete certain items from his schedule of personal property and eliminate his claim of exemption thereto without explanation. Debtor is also to receive certain items under the Marital Settlement Agreement for which Debtor fails to claim an exemption.

We view the Debtor's actions with respect to exemptions as an attempt to manipulate the process. We will not approve the Marital Settlement Agreement and then allow Debtor to change his exemptions. Since we have already determined that a change in the claim of exemptions will not be allowed, we leave it to the Debtor and Mrs. Knapp to file a motion for approval of the Marital Settlement Agreement if still desired.[4]

### Conclusion

Debtor's proffered amendment to his claim of exemptions at this late date is prejudicial to the Trustee and the bank-

---

4. The Marital Settlement Agreement provides that the Debtor and Mrs. Knapp have "[e]xchanged with each other inventories and appraisements of all property owned or possessed by each of them..." In fact, the fine silverware for dinner parties assigned to Debtor is specifically identified as "Item No. 147 from the wife's Amended Inventory dated January 10, 2001." If amended exemptions were under consideration, the Trustee would certainly have an interest in viewing those schedules and appraisements.

ruptcy estate and cannot be allowed. The Trustee's proposed distribution will be granted. Debtor and Mrs. Knapp shall notify the Court if they continue to seek approval of the Marital Settlement Agreement.