**In the Matter of Ernest Earl BARTLETT Susan Glenda Bartlett, Debtors.**

**No. 03–11760.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

June 21, 2005.

Roger B. Finderson, Fort Wayne, IN, for Debtors.

## *DECISION ON MOTION TO REOPEN*

ROBERT E. GRANT, Bankruptcy Judge.

Prior to the debtors' bankruptcy, their home was destroyed by fire. The loss was uninsured and left them with a vacant lot encumbered by a mortgage and, eventually, a judicial lien in favor of Protechs, Inc. When they filed bankruptcy the mortgage was in foreclosure. Because the amount due the mortgage holder exceeded the value of the now vacant lot, they decided not to claim an exemption in the property and did not seek to avoid Protechs' judicial lien. Their case proceeded without incident and was closed on August 6, 2003.

Following the bankruptcy, debtors' mortgagee somehow lost interest in the foreclosure and the action was dismissed

under circumstances which debtors' counsel contends renders the mortgage no longer valid or enforceable, leaving only the judicial lien against the property. Because of this change in circumstances, the debtors now wish they had made different decisions during their bankruptcy with regard to the property, claiming an exemption in it, and avoiding the judicial lien against it. They have asked the court to reopen this case, so that they can amend their claimed exemptions and, on the strength of that amendment, avoid Protechs' judicial lien. The matter is before the court on the motion to reopen. On its own initiative the court raised the question of whether debtors may properly reopen a case in order to amend their claimed exemptions.

■■■ A case is closed once the administration of the estate is complete. 11 U.S.C. § 350(a). It may, however, be reopened in order "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Reopening is supposed to be little more than an administrative function which is designed to resurrect closed files from the court's archives so that some type of request for relief can be received and acted upon. *In re Menk,* 241 B.R. 896, 913 (9th Cir. BAP 1999). *See also, In re David,* 106 B.R. 126, 128–29 (Bankr.E.D.Mich.1989). This is usually done in order to take care of some detail that was overlooked or left unfinished at the time the case was closed. It was not designed as an opportunity to create, and then enforce, rights that did not exist at the time the case was originally closed. Because of this, the court has previously taken the position that a debtor may not reopen a case in order to amend its claimed exemptions and then avoid judicial liens against the newly exempted property. *In re Clear,* 1992 WL 1359570 (N.D.Ind.1992).

Debtors' counsel disagrees with the court's decision in *Clear.* He focuses upon the language of § 350(b), which creates the opportunity to reopen cases, and the accepted practice of allowing debtors to reopen cases in order to use § 522(f) to avoid judicial liens on exempt property, and argues that the debtors should be able to do both of those things here. The argument overlooks some very important distinctions. The common practice of reopening a case to entertain a motion to avoid judicial liens generally involves property that had been claimed as exempt *before* the case was originally closed. *See e.g., Matter of Bianucci,* 4 F.3d 526, 527 (7th Cir. 1993). This case adds an additional wrinkle because the debtors need to amend their claimed exemptions before they can seek to avoid the judicial lien. *In re Berryhill,* 254 B.R. 242 (Bankr.N.D.Ind. 2000)(§ 522(f) may not be used to avoid liens on property in which no exemption has been claimed). *See also, Swaim v. Kleven,* 1:04–CV–33 (D.N.D.Ind. 2004)(same).

By focusing exclusively on § 350(b) and § 522(f) counsel has neglected Bankruptcy Rule 1009, which is the rule that governs the amendment of the voluntary petitions, statements, schedules and lists that are filed in connection with bankruptcy proceedings. Fed. R. Bankr.P. Rule 1009. This rule announces a general right to amend which, unlike traditional civil litigation, allows amendments to be effected without the need to seek or receive the court's permission. *Compare,* Fed. R.Civ.P. Rule 15(a). Given that the petition, statements and schedules are largely informational filings, such an efficient and unsupervised procedure is not surprising. Nonetheless, the right to amend is not unlimited. Amendments may be filed "at any time *before the case is closed."* Fed. R. Bankr.P. Rule 1009(a) (emphasis add-

ed). This case has been closed and, although it can be reopened, nothing can change the fact that it has been closed.

■ Counsel's argument ignores the plain language of Rule 1009(a), which imposes a limitation on the right to amend, and effectively eliminates the words "before the case is closed" from the rule. If the drafters had wanted to allow amendments "at any time," "at any time the case is open," or "unless the case is closed," they would have said so. Instead, they chose "at any time *before* the case is closed." Those words have meaning and to give them their proper effect requires the court to recognize that the act of closing a case terminates the right to amend. Otherwise, the desire to amend the schedules becomes cause to·reopen the case and, once the case is reopened, Rule 1009 would allow the schedules to be amended because the case is not closed. *See e.g., In re Goswami*, 304 B.R. 386 (9th Cir. BAP 2003). Such a circular interpretation would render the rule's limitation completely illusory and, therefore, meaningless. Words have meaning and, when confronted with that meaning, one should not engage in creative interpretative techniques to try and make them say something other than what they plainly do. *Hartford Underwriters Ins. Co. v. Union Planters*, 530 U.S. 1, 7, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000); *Knudsen v. Liberty Mutual Ins. Co.*, 411 F.3d 805 (7th Cir.2005).

The court recognizes that, in connection with their efforts at reopening, the debtors have already filed an amended schedule C and no objections were received within the time contemplated by Bankruptcy Rule 4003.[1] One must remember, however, that the amendment process is unsupervised, in the sense that the debtors do not need to seek or obtain the court's permission before filing those documents. Thus, the court is not involved at the beginning of that process, but only at a later date in determining the effect that should be given to the amendments. *See, Mazer v. United States*, 298 F.2d 579, 580 (7th Cir.1962)(amending schedules did not relieve debtor of the consequences of having made a false oath); *In re Knapp*, 283 B.R. 819 (Bankr.W.D.Pa.2002)(sustaining objections to amended exemptions). Consequently, the court may enforce the limitations of Rule 1009 even though amended schedules may have already been filed. Anything else would only encourage debtors to ignore the limitations of the rule and then argue that those limitations should not be enforced because their actions were not challenged sooner. *Cf. In re Schoonover*, 331 F.3d 575 (7th Cir.2003)(lienholder's failure to object to a claimed exemption did not preclude it from challenging the validity of that exemption in response to a motion to avoid its lien); *In re Banks*, 299 F.3d 296 (4th Cir.2002)(plan provision purporting to discharge a nondischargeable debt was ineffective even though the creditor had not objected to confirmation); *In re Hanson*, 397 F.3d 482 (7th Cir.2005) (same). Trying to avoid that possibility would only complicate and delay reopening cases and turn what was otherwise expected to be a relatively simple and innocuous, ex parte process into a much broader inquiry to make certain someone was not trying to play fast and loose with the rules. *Menk*, 241 B.R. at 913–17; *David*, 106

---

1. Once a case has been closed, it is doubtful that there is anyone left around to object. There is no trustee to supervise the estate and, even if there were, since the property in question has already been abandoned and denying the claimed exemption will not change that, neither a trustee nor the general creditor body would care. There is the possibility that the U.S. Trustee might do something, but it was invited to participate in the consideration of this issue and has chosen not to do so.

B.R. at 128–29; *In re Keenan,* 106 B.R. 239, 241 (Bankr.D.Col.1989).

■■■■ In an effort to avoid the operation of the plain language of Rule 1009, debtors argue that they could not claim an exemption in the real estate while their case was still open because it was not until after the case was closed that the foreclosure action was dismissed. It was this dismissal, they contend, that created equity in the property which, in their view, was a prerequisite to the ability to claim an exemption in it.[2] Consequently, they advance an equitable argument to circumvent the limitations of Rule 1009. Such a plea to equity is unavailing. Whatever equitable powers the bankruptcy court may have can only be exercised within the confines of the Bankruptcy Code and the applicable rules of procedure. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988); *Lerch v. Federal Land Bank,* 94 B.R. 998 (N.D.Ill.1989). Those powers can not be used to override what the law otherwise requires. *See, In re WAPI, Inc.,* 171 B.R. 130, 133 (Bankr.N.D.Ala.1994); *Johnson v. First Natl. Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir.1983). Furthermore, the debtors' fundamental premise—that they could not claim an exemption in the property because they had no equity in it—is wrong. Nothing prevents a debtor from claiming an exemption in encumbered or over encumbered property. While the value of property in relationship to the amounts due on account of liens and encumbrances against it—particularly non-avoidable liens and encumbrances—may well have an impact upon the value of any exemption debtors might wish to claim, equity is not a prerequisite for the claim itself. *In re Higgins,* 201 B.R. 965, 967–68 (9th Cir. BAP 1996); *In re Taras,* 304 B.R. 912, 915 (Bankr.S.D.Ga.2004); *Berryhill,* 254 B.R. at 244; *In re VanZant,* 210 B.R. 1011, 1016 (Bankr.S.D.Ill.1997); *Matter of Sherbahn,* 170 B.R. 137, 139 (Bankr. N.D.Ind.1994); *In re Bernstein,* 62 B.R. 545, 550 (Bankr.D.Vt.1986). *See also, Swaim v. Kleven,* 1:04–CV–33 p. 3 (D.N.D.Ind.2004). Indeed, significant portions of § 522 are designed to allow a debtor to *create* equity in exempt property. 11 U.S.C. § 522(f), (g), (h), (i). If equity were a prerequisite to a claimed exemption, those avoiding powers would have little meaning.

The court would also note that § 522 allows a debtor to claim "exempt[ions] from property of the estate. . . ." 11 U.S.C. § 522(b). Upon the closing of the case the bankruptcy estate effectively ceases to exist and all scheduled property that has not otherwise been disposed of is abandoned. 11 U.S.C. § 554(c). Consequently, there is no longer an estate from which exemptions may be claimed. Whatever might have been left was returned to the debtor and, as such, is no longer subject to the possibility of being exempted from the estate. When Congress wanted to give the debtor the opportunity to exercise rights as to property after it had been abandoned from the estate it clearly said so. *See,* 11 U.S.C. § 722 (a debtor may redeem property from a lien if the property has been exempted or abandoned). It did not do so where claiming exemptions are concerned. This is hardly surprising since the primary purpose of exemptions is to allocate property (or the value of property) between the debtor and the estate, *Payne v. Wood,* 775 F.2d 202, 204 (7th Cir.1985), and no real

---

2. The right to claim an exemption is determined as of the date of the petition. 11 U.S.C. § 522(b)(2)(A). *See also, In re Orso,* 283 F.3d 686, 691–92 (5th Cir.2002); *In re Webber,* 278 B.R. 294 (Bankr.D.Mass.2002). If the debtors are correct in their contention that equity in property is required in order to claim an exemption in it, they had no right to claim an exemption in the real estate when their case was filed and they should not be amending Schedule C to claim an exemption they were not originally entitled to.

purpose would be served by giving debtors an opportunity to claim exemptions in property in which the estate had no interest. *See, In re Sewell,* 180 F.3d 707, 710 (5th Cir.1999); *In re DeLucia,* 261 B.R. 561, 564 (Bankr.D.Conn.2001); *In re Doyle,* 209 B.R. 897, 904 (Bankr.N.D.Ill. 1997).

■ Whether a case is reopened after it has been closed is a matter committed to the court's discretion. *Bianucci,* 4 F.3d at 528; *Matter of Shondel,* 950 F.2d 1301, 1304 (7th Cir.1991). The debtors had every opportunity to claim an exemption in their real property before this case was closed. They made a conscious decision not to do so. For whatever reason, things did not turn out as they planned and, in something akin to buyer's remorse, they now regret their decision and wish they had acted differently. While § 350 may permit a case to be reopened, it is not the equivalent of a rewind button which allows one to return to the date of closing, replay the tape and, in the process of doing so, rewrite the script to pretend that certain things never happened. *Menk,* 241 B.R. at 913 ("Reopening the case does not undo any of the statutory consequences of closing."). Rule 1009(a) requires amendments

to the debtors' schedules to be made before the case is closed.[3] This case was closed on August 6, 2003. The court holds that it is not appropriate to allow the debtors to reopen this case in order to amend their claimed exemptions and such a post-closure amendment is of no effect. The motion to reopen will be DENIED. An order doing so will be entered.

**3.** In saying this, the court recognizes that cases are often reopened to allow a debtor to amend a schedule of creditors. Nonetheless, the reported decisions universally recognize that such an act confers absolutely no substantive rights on either the debtor or the creditor and the effect of the debtors' bankruptcy upon creditors' claims is governed by § 523(a)(3), whether or not the schedules are amended. *See e.g., In re Madaj,* 149 F.3d 467, 468–69 (6th Cir.1998); *In re Beezley,* 994 F.2d 1433, 1434 (9th Cir.1993); *In re Houston,* 310 B.R. 224, 225 (Bankr.M.D.Ala.2004); *In re Guseck,* 310 B.R. 400 (Bankr.E.D.Wis.2004); *In re Thibodeau,* 136 B.R. 7 (Bankr.D.Mass. 1992); *In re Mendiola,* 99 B.R. 864 (Bankr. N.D.Ill.1989); *In re Karamitsos,* 88 B.R. 122 (Bankr.S.D.Tex.1988); *In re Blossom,* 57 B.R. 285 (Bankr.N.D.Ohio 1986). Indeed, many decisions deny a motion to reopen under

these circumstances because such an amendment is a meaningless act. *Id.* While post-reopening amendments to creditor schedules admittedly run afoul of the limitations of Rule 1009(a), since they create no substantive rights whatsoever, the error is a harmless one. There is, in this court's opinion, a significant difference between reopening a case in order to do something which will have no impact upon any parties' substantive rights and doing so to create rights that would not otherwise exist. *In re Clear,* 1992 WL 1359570 *2 (N.D.Ind.1992). *See also, In re Superior Crewboats, Inc.,* 374 F.3d 330 (5th Cir.2004)(debtor may not reopen a case to amend property schedules to include an undisclosed personal injury claim in order to avoid the consequences of not scheduling the asset); *In re Walker,* 323 B.R. 188 (Bankr. S.D.Tex.2005)(same).